(34 Misc. Rep. 420.)

## VACHERON v. CITY OF NEW YORK.

(Supreme Court, Special Term, Queens County. April, 1901.)

1. MUNICIPAL CORPORATIONS—CLAIMS—ACTIONS.
     A claimant may maintain an action against the city of New York to collect his claim, instead of resorting to an audit.

2. SAME—CONTRACTS—CONSOLIDATION—EFFECT.
     Where plaintiff, in 1897, made a 10-year contract with Queens county for sprinkling roads at a certain amount per mile per season, such contract was valid only for the year 1897, since the charter of New York, taking effect January 1, 1898, deprived the board of supervisors of power over such roads after that date; and therefore plaintiff cannot recover from the city of New York for services afterwards performed under such contract.

3. COUNTIES—BOARD OF SUPERVISORS—CONTRACTS.
     A board of supervisors of a county had no power to make a 10-year contract for sprinkling roads, since such a contract runs longer than the period of the board's existence.

Action by Eugene F. Vacheron against the city of New York to recover for sprinkling roads in the borough of Queens in 1899 under a 10-year contract for a certain sum per mile for each season, made with Queens county by its board of supervisors in 1897. Judgment for defendant.

H. A. Monfort, for plaintiff.
James T. Malone, for defendant.

GAYNOR, J.   1. I do not see how the objection that the plaintiff cannot maintain an action to collect his claim (if it be valid), but that he must collect it by presenting it for audit, and compelling its audit by mandamus, if necessary, can be good.   Why should that be so?   The defendant, as is the case with cities and villages generally, is given the power and means of auditing claims presented against it.   This is essential in order that it may safely pay such claims.   But since when has the suggestion arisen that a claimant is compelled to resort to such audit in order to collect his claim? That was never so.   On the contrary, such claimants have always had their common law right to bring an action in the courts, notwithstanding such legislative provision for audit.   In the case of this defendant the legislature has not taken away such right of action.   It has simply provided, as has been usual in the case of such municipal corporations, for an official auditing of claims presented against it.   Charter, §§ 149, 151, subd. 4.   I do not see how any distinction can be made in respect of a claim existing at the time the defendant was created against any of the municipal corporations that were brought into it.   The charter of the defendant makes no such distinction; it simply makes such claims valid against the defendant.   Subdivision 4.   Nor do I understand that the audit of a claim against a municipal corporation which can be collected by an action can be compelled by mandamus.   The fact that a claim is collectible by action (i. e., that an adequate remedy by action exists), is always a reason why an application for a writ of mandamus to compel its audit would have to be denied.

I do not understand that the Case of Goodwin, 48 App. Div. 492, 62 N. Y. Supp. 964, must be taken as doing away with the foregoing long established principles, but rather that it is a case apart, standing on its own peculiar circumstances, and not applicable to other cases.   The idea that prevailed there seems from the opinion to have been that as the claim could have been collected of the county of Richmond only by audit of its board of supervisors, it could therefore by analogy be collected of the city of New York only by audit of the comptroller; and yet such opinion at the close recognizes that such audit would be an empty formality binding no one.   I am not sure I understand this.   Moreover, according to the decision in Kennedy v. County of Queens it could have been collected against the county of Richmond without audit by the supervisors, but that decision does not seem to have been accepted.

That the charter requires claims to be presented to the comptroller, and that a certain length of time for audit and payment must then elapse, as a condition precedent to a right to bring action thereon against the city, is quite another thing.   That does not give any right to compel an audit; and except for such provision a claimant would not have to present his claim for audit at all.

The decision in Re Freel, 148 N. Y. 165, 42 N. E. 586, in no way conflicts with the foregoing; nor can it even seem to if it be understood.   The comptroller of the city of Brooklyn was required by mandamus to issue his warrant to pay the claim; but the claim had not only been adjusted and certified by the city officials to whom that

power was given by the charter, but also presented to and audited and allowed by the city auditor. It·was not a case of compelling the audit of a claim at all, but of requiring the comptroller to do the merely ministerial act of drawing his warrant for the payment of an audited claim, just the same as he would have been required to draw his warrant to pay a judgment against the city. And between a claim so audited and allowed, and a claim reduced to judgment, there is no difference in respect of the right to have it paid, unless the comptroller, or official who pays claims, is given the right to disregard the audit. The audit like the judgment is binding on both parties, and cannot be attacked collaterally. Osterhoudt v. Rigney, 98 N. Y. 222; Albrecht v. Queens Co., 84 Hun, 399, 32 N. Y. Supp. 473.

An application like that in the Freel Case, based as it was on the fact that the claim had been audited and allowed by the city auditor, and that such audit bound the city, could not succeed under the present charter of the city of New York, which provides that the audit of a claim against the city (i. e., by the comptroller) shall not have "the binding effect of a judgment or decree." Section 149.

The recent decision in People v. Coler, 56 App. Div. 459, 68 N. Y. Supp. 767, by a seriously divided court seems as reported to allow a writ of mandamus to compel the comptroller to pay a claim which had not been audited at all. It may well be doubted that that was the true state of the case. That the disbursing officer of a municipal corporation can be required to pay a claim which has been adjudicated and fixed by an audit or a judgment of a court binding on him, is plain enough; but how can he be required to pay a claim which has not been audited or reduced to judgment? And in the case of the city of New York, as has been pointed out, payment cannot even be compelled on an audit, the charter carefully prescribing that it shall not be binding, and evidently intending that the comptroller may notwithstanding it send the claimant to an action at law.

The present case is not analogous to that of the ordinary run of claims against counties and towns. They formerly could not be sued ·in this state except ·where the suit or action was specifically allowed by statute, because they were not municipal corporations, but subdivisions of the state government, and therefore no more capable of being sued than the state itself; and sovereignty cannot be sued in its courts without its permission. The means of county and town audit provided for had therefore necessarily to be resorted to exclusively. It would seem that towns and counties are deemed in a recent case to have been made full municipal corporations, and generally suable, by section 3 of the county law (Kennedy v. Queens Co., 47 App. Div. 250, 62 N. Y. Supp. 276); although the general understanding had been that that section was not intended to create or allow any new actions against counties, but only (as it seemed to read) to have such actions as were then allowed by statute brought against the county by name instead of in form and name against its board of supervisors, or other officials, as theretofore required by statute. If that be their status, then they may be sued without first presenting the claim for audit, unless there be ·some statute

requiring such presentation. In that view this plaintiff could have sued the county of Queens and not sought an audit of his claim by the board of supervisors, and can for the same reason sue the defendant instead of resorting to an audit.

2. But the contract with the plaintiff had no validity after the year 1897. The charter of the defendant was passed May 4, 1897, to go into effect January 1, 1898. The power of the board of supervisors of Queens county over the roads of the county was thereby limited to the period from May 4, 1897, to January 1, 1898. The contract here in question, made July 6, 1897, was therefore invalid except for the remainder of the year 1897. Hendrickson v. City of New York, 160 N. Y. 144, 54 N. E. 680. It is claimed that the opinion in the court of appeals in the case cited puts the invalidity of the contract there principally on the ground of fraud by the officials in the making of it. This seems to be so; and the opinion apparently assumes to make a finding of fact that there was fraud. I am therefore asked to distinguish the present case from that one on the ground that the answer here does not plead fraud, and it is conceded there was no fraud. But if you look into the record in the Hendrickson Case you will find that no fraud was pleaded there either, and that there was therefore no such question in that case, and of course there was no finding of fraud by the trial court; and as the court of appeals had no power to make such a finding of fact, it cannot be deemed that the decision of that court rested thereon. The remarks in that respect of the judge writing the opinion were not official but individual; and the decision of the court must therefore be deemed to rest only on lack of power in the officials to make the contract.

3. I am also of the opinion that the board of supervisors had no power to make such a contract to run longer than the period of its own existence. The care of the roads was an administrative duty to be performed by each successive board during its existence. An existing board could not perform that duty for its successors.

Judgment for the defendant.