PICKET PUBLISHING CO., RESPONDENT, *v.* BOARD OF
COUNTY COMMISSIONERS OF CARBON COUNTY,
APPELLANT.

(No.  2,445.)

(Submitted November 5, 1907.  Decided November 18, 1907.)

[92 Pac. 524.]

*Injunction—County   Printing—Contracts—Board   of   County
Commissioners—Powers—Public Policy.*

Injunction—Board   of   County   Commissioners—Printing   Contracts—
Validity.
1. *Held*, on an appeal from an order refusing to dissolve an injunction, that, under Political Code, sections 4230 (subd. 20) and 4233, a contract made by a board of county commissioners, a few weeks before the expiration of its term of office and upon the ex-

piration of a prior contract, for county printing for the two suc-
ceeding years, was valid, in the absence of fraud in its making, and
binding upon the incoming board.

Same—Public Policy.
  2.  Nor was the contract, above referred to, void as against public
policy.

Same—Contracts—Public Policy—How to be Determined.
  3.  Courts may not arbitrarily declare an act or contract void as
against public policy; but the question of its invalidity in this respect
must be determined by them in view of legislative declarations, or, in
their absence, by reference to judicial decisions.

Boards of County Commissioners—Powers—Abuse.
  4.  The mere fact that the power conferred, by sections 4230 and
4233 of the Political Code, upon boards of county commissioners
to let contracts for county printing for a term of two years, may be
abused, is not of itself a sufficient reason for holding that such
power does not exist or ought not to be exercised.

*Appeal from District Court, Carbon County; C. H. Loud,
Judge.*

ACTION by the Picket Publishing Company against the board
of county commissioners of Carbon county to restrain the viola-
tion of a printing contract.   From a judgment for plaintiff, and
from an order refusing to dissolve an injunction, defendant ap-
peals.   Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,*
Assistant Attorney General, for Appellant.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In December, 1904, the board of county commissioners of
Carbon county entered into a contract for the county printing
for a term of two years.   Upon the expiration of that con-
tract, in December, 1906, the same board entered into a con-
tract with the Picket Publishing Company, plaintiff and re-
spondent herein, by the terms of which that company agreed
to do the public printing for Carbon county for two years from
December 11, 1906, at a certain specified rate, payments to
be made quarterly.   The personnel of the board of county com-
missioners was entirely changed by the election in November,

1906, the new board coming into existence in January, 1907. On January 22, 1907, the new board, without the knowledge or consent of the Picket Publishing Company, made and entered upon its minutes an order which assumed to abrogate and set aside the contract of December, 1906, made by the old board. This action was thereupon commenced by the Picket Publishing Company to restrain the new board from violating that contract. A temporary injunction was issued. The defendant interposed a demurrer to the amended complaint and filed a motion to dissolve the injunction. The demurrer and motion were overruled. The defendant declined to plead further, its default was entered, and, upon a hearing had, a judgment was rendered and entered in favor of the plaintiff, which made perpetual the injunction and awarded plaintiff its costs. From the order refusing to dissolve the injunction and from the final judgment, the defendant appeals.

It is contended on behalf of the appellant that a contract of this character entered into by the outgoing board, which contract extends beyond the term of such board and tends to bind the incoming board, is void, and numerous cases are cited in support of that contention. (*Bank* v. *Peck,* 43 Kan. 643, 23 Pac. 1077; *Shelden* v. *Butler County,* 48 Kan. 356, 29 Pac. 759, 16 L. R. A. 257; *Coffee County* v. *Smith,* 50 Kan. 350, 32 Pac. 30; *Milliken* v. *Edgar County,* 142 Ill. 528, 32 N. E. 493, 18 L. R. A. 447; *Board of Commissioners of Jay County* v. *Taylor,* 123 Ind. 148, 23 N. E. 752, 7 L. R. A. 160; *Morrison* v. *Board,* 16 Ind. App. 317, 44 N. E. 65; *Vacheron* v. *New York City,* 34 Misc. Rep. 420, 69 N. Y. Supp. 608; *Hudson County* v. *Layton,* 28 N. J. L. 244; *Franklin County* v. *Ranck,* 9 Ohio C. C. 301; *State* v. *Platner,* 43 Iowa, 140.)

The case of *Bank* v. *Peck* arose out of an attempt on the part of the First National Bank of Medicine Lodge to compel the board of county commissioners to deposit the public moneys of that county in such bank, and set up a contract made with the old board for a term of three years. Under the Kansas statutes public moneys are required to be deposited in some bank

or banks and interest collected on the average daily balances, but the matter of choosing the particular depository or depositories, and the character of security to be required, are left to the discretion of the several boards. The court held that, since the credit of the designated depository might become impaired or the security furnished valueless, it would be manifestly injurious to the public welfare and against public policy to permit a board of county commissioners to bind the county to deposit in a particular bank for a long period of time.

*Shelden* v. *Butler County* arose out of the attempted breach of a printing contract. The court held that, since there is not any limit fixed by law upon the time during which a printing contract may run, therefore, if the old board could contract for more than one year, it could likewise for a long term of years—almost an indefinite time. In view of this, and since under the statutes of Kansas the board is required to reorganize once a year, the powers of the board must be held to be limited, in matters of this character, to the making of a contract which does not extend beyond one year.

*Coffee County* v. *Smith* was decided by the same court, and the same result reached upon the same principles.

*Millikin* v. *Edgar County* was a controversy between the keeper of the county poor and the board of supervisors. The old board entered into a contract with Milliken to act as keeper for three years. The new board annulled that contract, and this action resulted. The court held that, as there was not any limit expressly imposed by law upon the time during which such a contract might run, therefore, if it could be made to run for a term beyond that of the board making it, it might likewise be made to run for many years; but the court, construing the statute of Illinois authorizing the employment of such keeper with other provisions of the laws of that state—which are not set out in the opinion—reached the conclusion that the legislative intent was to limit the term of such employment by any board to one year.

In the case of *Board of Jay County* v. *Taylor* the court particularly characterizes the contract under consideration in that case as one which was not for the public welfare, and, since it provided for the employment of a legal adviser to the board, the old board ought not to be permitted by such a contract to impose upon the new board an attorney in whom the new board might not have any confidence. The court held that the contract was void as against public policy.

*Morrison* v. *Board* arose out of the attempt by a county auditor, after his successor had been elected and eighteen months before the next election, to bind his county by a contract which he made with a printing-house to furnish the necessary election blanks, books, etc., for such election. The court held that the outgoing auditor had not the power to make the contract, and, on rehearing, said that, if such a contract could be made, it would be void as against public policy.

The contract which gave rise to the case of *Vacheron* v. *New York City* was made in 1891 to run for a period of ten years, and provided for the employment of Vacheron to do certain road work for that time. The court held that since the Act of the legislature providing for the charter of Greater New York prescribed that such charter should become effective on the first day of January, 1898, the contract with Vacheron expired on that date, since under the charter the board of supervisors did not have control of that particular character of work.

In *Hudson County* v. *Layton* and *State* v. *Platner* it was held in each instance that the contract in question operated in violation of a statute of the respective states.

In *Franklin County* v. *Ranck* the Ohio circuit court held that the contract by the outgoing board with a person to act as janitor of the courthouse for the next ensuing year was not binding upon the incoming board, and concluded that such contract is "not only evidence of unseemly conduct on the part of the members of the board, but in its object, operation, and tendency, is calculated to be prejudicial to the public interests and is against public policy, and void."

In our opinion, every case cited above is clearly distinguishable in the facts from the one now before us. Those cases divide themselves into two classes: (a) Those in which it is held that the board or officer did not have the power to make the contract under consideration; and (b) those holding that such contracts are void as against public policy.

Our Political Code (section 4230, subdivision 20) particularly authorizes the board of county commissioners to enter into a contract for public printing. It provides: "The board of county commissioners has jurisdiction and power under such limitations and restrictions as are prescribed by law: * * * 20. To contract for the county printing, and provide books and stationery for county officers." And with equal particularity the same Code, in section 4233, limits the term of such a contract to two years, in this language: "* * * No such contract for printing shall extend for more than two years."

First, then, it becomes a question of the power of the outgoing board of Carbon county to make a contract for public printing for a term not exceeding the limit fixed by statute. That the board has the power to make *a* contract for public printing is not open to question. The Code above specifically grants the power, and there is not any limitation or restriction imposed by law upon that power, save only that it shall be for printing for which the county may be chargeable, and the further limitations as to prices to be paid and the term for which such contract shall run as stated above. The power to make the contract is specifically granted; but the time when such power shall be exercised is not limited or prescribed. Therefore we say that the proposition is incontrovertible that it may be exercised at any time during the term of the board, when a prior contract for such work has expired or is about to expire, and, so far as the power of the board is concerned, it is just as ample and complete the last week of the board's official existence as at any time prior thereto. The making of such a contract at a time near the close of the official career of an outgoing board may, in some instances, savor of bad faith or even

of fraud; but there is not any charge of bad faith or fraud in this instance. The board having the power to make a printing contract at any time during its term, when such a contract is to be let, and the Code having expressly authorized such a contract to be made for a term not exceeding two years, and the contract under consideration being of that character, it was valid and binding upon the new board as upon the old one (*Board of Commissioners of Jay County* v. *Taylor,* above), in the absence of fraud in its making, unless the contract is void as against public policy.

Second: Can it be said that this contract falls within the second class of cases above, and is void as against public policy? In determining whether any matter is against public policy, we are not left without any criterion by which to be guided in this state; and neither can this court arbitrarily declare an act or contract under that ban. The public policy of this state is to be determined from legislative declarations, or, in the absence of any such declarations, from judicial decisions. In *Mac-Ginniss* v. *Boston & Montana Con. C. & S. Min. Co.,* 29 Mont. 428, 75 Pac. 89, this court said: "The public policy of the state varies from time to time. It is not to be measured by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the law-making power, and, in the absence of them, to the decisions of the courts." There is not anything in the decisions of this court which militates against the validity of a contract of this character.

Our Code, in considering the subject of contracts, declares: "That is not lawful which is: (1) Contrary to an express provision of law; (2) Contrary to the policy of express law, though not expressly prohibited; or, (3) otherwise contrary to good morals." (Civ. Code, sec. 2240.)

This contract is not one which is contrary to any express provision of law; and neither can it be classed as one contrary to good morals. It is not a contract which can be said to be against the policy of express law, for, as indicated above, the legisla-

ture particularly clothed the board with power to make such contract, and, while it could have limited the duration of such contract to the term of the board making it, it did not do so, but fixed the limit of its duration at two years.   When the legislature by express provision of law thus fixed the limit of duration of such a contract, such legislative declaration excludes the idea that a contract drawn according to the mandate of the law, and for a term not exceeding the limit so prescribed, can be against the policy of the law.

It is no argument to say that the power thus given to these several boards may sometimes be abused.   The mere fact that such authority may be, or in fact is, abused in any given instance, is not itself a reason for holding that such power does not exist or ought not to be exercised.

In support of our conclusion, we cite *Board of Commissioners* v. *Shields,* 130 Ind. 6, 29 N. E. 385; *Reubelt* v. *School Town of Noblesville,* 106 Ind. 478, 7 N. E. 206; *Webb* v. *Spokane County,* 9 Wash. 103, 37 Pac. 282; *Liggett* v. *Board of Commissioners,* 6 Colo. App. 269, 40 Pac. 475.

We have not considered the question of the appropriate remedy in a case of this kind, since in this particular instance that question is purely academic.

We think the judgment and order of the district court should be affirmed; and it is so ordered.

*Affirmed.*


MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.