# Union Trust & Savings Bank, Trustee, et al., Defendants in Error, v. Kinloch Long Distance Telephone Company of Missouri et al., Plaintiffs in Error.

1. PUBLIC POLICY—*how determined.* The public policy of a state is to be determined from its legislative declarations or in their absence from its judicial decisions.

2. CONTRACTS—*when void as against public policy.* Any contract which tends to prevent competition or tends to interfere with the freedom of competition, entered into by a corporation whose duty it is under its charter to serve the public, is against public policy and void in Illinois.

3. CONTRACTS—*when between telephone companies against public policy.* A contract between telephone companies by which one of them is restricted and impeded in performing its public obligations is contrary to public policy and void,

Foreclosure. Error to the Circuit Court of Fayette county; the HON. THOMAS M. JETT, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed April 12, 1912.

REYNOLDS & HARLAN and PATTON & PATTON, for plaintiffs in error.

W. B. MANN and DAVID K. TONE, for defendants in error; G. T. TURNER, W. A. LOUDAN and BROWN & BURNSIDE, of counsel.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Defendant in error, Union Trust and Savings Bank of East St. Louis, Trustee, filed its bill alleging that on June 7, 1907, the Vandalia Telephone Company, hereinafter called Telephone Company, by a trust deed in the nature of a mortgage conveyed to defendant in error, Union Trust and Savings Bank of East St. Louis, all of its property, real and personal, of every description including its franchise, to secure bonds issued by it in the sum of seven thousand dollars and purchased by the Farmers and Merchants Bank. It was alleged that a portion of said bonds was due and unpaid to the said Bank and that said Telephone Company was in default. It was further charged that the Kinloch Long Distance Telephone Company of Missouri, hereinafter called the Long Distance Company, claimed to have some interest in the mortgaged property which was subsequent to the lien of the trust deed. The bill prayed a foreclosure and sale of the property.

The Telephone Company answered admitting the execution of the mortgage and the bonds, and that the bonds were due and unpaid, but denied that the Long Distance Company had any right or interest in the property described in the trust deed or any lien thereon.

The Long Distance Company answered the bill set-

ting up that it had an interest in the property which was prior to the lien of the trust deed arising out of an agreement entered into prior to the execution of the deed, and that all parties had notice thereof. The agreement is set forth in the answer, and in substance recites that the Long Distance Company had long distance telephone lines in operation in several states, and in the operation of its lines desired to interchange business with the Telephone Company, and that the latter company had an exchange in Vandalia with lines to points in Fayette county, and desired to interchange business with the Long Distance Company, and in consideration of the premises the Telephone Company agreed to and did grant a license to the Long Distance Company to attach cross arms to certain of its poles in Vandalia, and to connect with its exchange through its switch boards, so an interchange of business might at all times be carried on, the Telephone Company to maintain its plant and all its appliances at its own expense. The fourth, fifth and twelfth clauses of the agreement read as follows:

Fourth: "No connection with any other line or lines except those actually owned, controlled and operated by the Telephone Company is contemplated or intended by the Long Distance Company in this agreement, and no connection with any other line will be given, or allowed to be given by the Telephone Company to the Long Distance Company's lines under penalty of forfeiture of the rights herein contained, unless special agreement in writing is entered into between the parties hereto, and the third parties who desire to connect to the Long Distance Company's system through the Telephone Company's lines, in which agreement the Telephone Company becomes responsible to the Long Distance Company for every message delivered to the Long Distance Company's lines by the third parties, and makes said third parties' lines in every other respect a part of its own system, and bound by the terms and conditions of this agreement. Noth-

312     APPELLATE COURTS OF ILLINOIS.

Union T. & S. Bank v. K. L. D. T. Co. of Mo., 169 Ill. App. 309.

ing in this section however shall be construed to prevent the Long Distance Company from connecting with other companies and exchanges at points outside of the City of Vandalia.''

Fifth: ''The Telephone Company agrees to deliver to the Long Distance Company all messages originating on its own line or exchange, and which terminate at points reached by the Long Distance Company or its connecting lines, and the Long Distance Company agrees to deliver to the Telephone Company all messages it receives which terminate at points reached by the Telephone Company in the County of Fayette aforesaid. If the lines of the Telephone Company reach points outside of said County of Fayette which points are also reached by other 'independent' or 'opposition' lines, the Long Distance Company hereby agrees to distribute the business destined for such common point as equally as practicable between the Telephone Company and such other independent or opposition line or lines, but the Long Distance Company reserves the right to transmit all business to such common point over such line or lines as will enable it to render the best service.''

Twelfth: ''The Telephone Company shall not sell or lease any of its wires or exchanges to any Telephone Company, or to any corporation or individual whatsoever, so as to impair the provisions of this contract without the consent of the Long Distance Company; nor have the right to connect or exchange business with any company at or for points reached by the Long Distance Company or its connecting lines; nor have the right to do anything which will in any manner impair the obligations of this contract, or impair the efficiency of the long distance business or its connection with the Long Distance Company.''

Other clauses of the agreement not material to be set forth provide for the division of tolls and the method of transacting the business, and it is further provided the agreement shall remain in force during the life of the Telephone Company's franchise to operate in Vandalia, and during any renewals or extensions thereof.

FOURTH DISTRICT—APRIL, 1912.        313

Union T. & S. Bank v. K. L. D. T. Co. of Mo., 169 Ill. App. 309.

The answer further averred that by the terms of the agreement the Long Distance Company agreed not to sell or lease any of its wires or exchanges nor to do anything which would impair the obligations of the contract nor the efficiency of the long distance business of, or connections with the Telephone Company; that the contract was of great value; that at the time of the execution of the trust deed and the delivery of the bonds the bank had notice of the agreement and that it was then being carried out; it was further averred that the contract was a charge upon the property of the Telephone Company prior to the mortgage.

To that part of the answer setting up that the contract was a charge superior to the lien of the trust deed, defendants in error filed exceptions which were sustained, and the Long Distance Company filed no further answer. Thereupon the cause was heard upon the bill, answers of both Telephone Companies, and the replication to the answer of the Long Distance Company.

The chancellor entered a decree finding that the said contract between the Telephone Companies and set up in the answer of the Long Distance Company was contrary to public policy and void; that said Company had no title to or interest in the property conveyed by the trust deed, and that the lien of the holder of the bonds was superior to the alleged claim of the Long Distance Company. The decree provided for a foreclosure and sale free from any such alleged lien. From this order and decree the Long Distance Company prosecutes this writ of error.

The main controversy arises upon whether the agreement was contrary to public policy and void because it tended to create a monopoly, stifle competition, and prevent the Telephone Company from discharging its obligations to the public under its charter.

By the twelfth paragraph of the agreement the Tele-

314    APPELLATE COURTS OF ILLINOIS.

Union T. & S. Bank v. K. L. D. T. Co. of Mo., 169 Ill. App. 309.

phone Company agrees not to connect or exchange business with any other company for all cities and villages where the Long Distance Company maintains exchanges. This provision disables the Telephone Company from making any connection with any other long distance line having an exchange in the prohibited territory, and disables it from permitting its patrons at Vandalia from talking directly with persons in such territory who may have a telephone of some other long distance exchange. It is not a question whether said company would in the absence of the contract make such connection or whether it desired to do so, but whether it is against public policy for it by contract to disable itself from furnishing such service so that it might not freely do so.

It has been said that the public policy of a state is to be determined from legislative declarations, or in their absence from its judicial decisions. McGinniss v. Boston and M. Consol. Copper & G. Min. Co., 75 Pac. 89; Picket Pub. Co. v. Board of County Commissioners, 92 Pac. 524. So far as we are aware there has been no legislation in this state regulating the connection of lines of different telephone companies, and the State through its legislative department has not declared its policy in this regard; we must therefore turn to its judicial decisions to determine if we can whether such contracts as the one before us should be held to be against public policy. What courts of other jurisdictions have held upon the subject is of little value, if not in harmony with the policy of this state so far as it has been judicially declared. In the courts of some jurisdictions contracts like the one before us have been held void as being in contravention of public policy. The U. S. Tel. Co. v. Central Union Tel. Co., 171 Fed. Rep. 130; Home Tel. Co. v. Granby & N. Tel. Co., 146 Mo. App. 216; Central N. Y. T. & T. Co. v. Averill, 92 N. E. 206. In other jurisdictions similar contracts have

been upheld. The U. S. Tel. Co. v. The Middlepoint Home Tel. Co., 13 C. C. ns. 337; The U. S. Tel. Co. v. Delphos Home Tel. Co., 19 Ohio Decisions, 193; The Home Tel. Co. v. N. Manchester Tel. Co., 92 N. E. 558. In the case of Home Tel. Co. v. Sarcoxie Light and Tel. Co., decided by the Supreme Court of Mo. on July 3, 1911, and cited by counsel for plaintiff in error, it was held a contract similar to the one here was not against public policy, but an examination of the opinion shows there was a competitive line and the contract complained of increased the usefulness of each party to it, so far as the general public was concerned. It created competition and not being a monopoly was not against public policy. In the case before us there was no competition out of Vandalia, and the patrons of the Telephone Company there were obliged to send their messages over the long distance wires and through its exchanges, whether they wished to do so or not.

Contracts between corporations operating under public franchises and discharging public functions which tended to interfere with the freedom of competition have been considered in the judicial decisions of this state, and have been uniformly held contrary to public policy and void.

In Chicago Gas Light Co. v. Peoples Gas Light Co., 121 Ill. 530, both companies were authorized by their charters to furnish gas to the public in the city of Chicago. They entered into an agreement dividing the territory between them and each agreed to lay no mains or pipes in the territory of the other nor to furnish or sell any gas to persons living therein for one hundred years. It was held the contract was void on the ground of public policy for the reason the parties thereby abandoned a public duty to furnish gas to all the city; that their charters were the exercise of franchises belonging to the state; that the services to be rendered for the grant of them were of a public nature,

316          APPELLATE COURTS OF ILLINOIS.

Union T. & S. Bank v. K. L. D. T. Co. of Mo., 169 Ill. App. 309.

and that the franchise was conferred as well for the benefit of the public as of the Gas Companies.

In The People ex rel. v. Chicago Gas Trust Co., 130 Ill. 268, it was held, that "Whatever tends to prevent competition between those engaged in an employment or business impressed with a public character is opposed to public policy and therefore unlawful; and whatever tends to create a monopoly is unlawful as being contrary to public policy. All grants creating monopolies and acts tending to prevent proper competition are by the common law illegal and void." To the same effect, in South Chicago Ry. Co. v. Calumet Ry. Co., 171 Ill. 391, it was held that a contract between two street railway companies not to cross each other's track at grade was in effect a contract not to cross each other's tracks at all, and not to invade each other's territory. It was held they owed a duty to the public to use their respective franchises unrestrained by contract, and any agreement between themselves or with others which tended to prevent the discharge of that duty was void. From these decisions it is clear that any contract which tends to prevent proper competition, or tends to interfere with the freedom of competition, entered into by a corporation whose duty it is under its charter to serve the public, is against public policy and void in this state.

By the agreement between these companies no patron of the Telephone Company could talk directly with anyone in any city or village where the long distance had an exchange except over the long distance lines to the exclusion of all other lines. If this was not a monopoly of such business, it at least tended to create one, and to interfere with the freedom of competition in the transmission of long distance messages.

In our opinion the chancellor correctly held the contract void; that the Kinloch Long Distance Telephone Company of Missouri had no title or interest in the property, and that the holder of the bonds was entitled

to a foreclosure free from any alleged lien of the said Telephone Company.

The decree of the Circuit Court is affirmed.

*Affirmed.*