OF THE

## STATE OF ARIZONA

FROM APRIL 20, 1915, TO FEBRUARY 25, 1916.

---

[Civil No. 1414. Filed April 20, 1915.]

[147 Pac. 745.]

## TOWN OF TEMPE, Appellant, v. C. A. CORBELL, Appellee.

1. MUNICIPAL CORPORATIONS—CONTRACTS—BREACH—EVIDENCE.—That a town contracting with one to sprinkle its streets for a year breached the contract by discharging him is not shown by proof that the town marshal notified him that the town council were going to take the wagon from him, in the absence of evidence that the marshal acted as agent of the town to terminate the contract.

2. MUNICIPAL CORPORATIONS — AUTHORITY OF MUNICIPAL OFFICERS — SPRINKLING OF STREETS.—Laws of 1893, No. 72, conferring on town councilmen the exclusive control over the streets, and power to appoint all officers and agents of the town, confers authority to provide for the sprinkling of the streets and to appoint one to perform the service under the control of the council, and the person appointed may be removed at any time unless the council, in appointing him, may contract with him and bind the town to retain him a specified term.

3. MUNICIPAL CORPORATIONS—CONTRACTS—VALIDITY.—A contract which extends beyond the term of office of municipal officers making it, is, if made in good faith, ordinarily valid.

4. MUNICIPAL CORPORATIONS—CONTRACTS—VALIDITY.—A contract by a town council for the employment of a person to sprinkle the streets for a year beginning a few days before a new council would assume office, and executed after the election of the new council, is void, as contrary to public policy, and the new council may terminate it at will.

XVII Ariz.—1           (1)

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Reversed and remanded, with instructions to dismiss.

### STATEMENT OF FACTS BY THE COURT.

The appellee, as plaintiff, commenced this action against the incorporated town of Tempe, the appellant, seeking to recover damages resulting from a breach of a contract alleged to have been entered into by the parties on June 1, 1912. A copy of the contract was annexed to the complaint and considered as proven on the trial.

The contract, so far as deemed material, is as follows:

"This agreement made and entered into this 1st day of June, 1912, by and between Tempe, an incorporated town in the state of Arizona, party of the first part, and C. A. Corbell, a resident of the town of Tempe, Ariz., party of the second part, witnesseth:

"That the said party of the second part, for and in consideration of the payments hereinafter mentioned to be paid by the said party of the first part to the said party of the second part, hereby contracts, covenants, and agrees to work for the said party of the first part for the period of one year, to wit, from the 1st day of June, 1912, to the 1st day of June, 1913, for the sum of eighty-five dollars per month, payable monthly at the time and in the manner in which all bills against the city are paid, said second party working every day except Sundays. Said party of the second part shall furnish one good span of horses, harness, and one good farm wagon with dump boards and box.

"The work to be done shall consist in sprinkling the streets under the supervision of the supervisor of streets and when said sprinkling is unnecessary or completed, the said party of the second part shall put in the balance of his time in hauling dirt and gravel and repairing streets and sidewalks under the supervision of the supervisor of streets. . . .

"It is further distinctly understood and agreed by and between the parties hereto that in case the said party of the second part does not give his personal attention to the performance of the work hereinbefore mentioned that he shall furnish a man to take his place that is entirely satisfactory to the supervisor of streets. It is further understood and

agreed that the said party of the second part shall not be compelled to haul any garbage. It is further understood that the refuse and sweepings from the streets shall not be considered as garbage, and that the same shall be hauled by the said party of the second part when directed so by the supervisor of streets. . . . ''

Signed by the mayor and plaintiff, and attested by the town clerk.

It is admitted that on June 1, 1912, when the contract is alleged to have been entered into, the common council was composed of Dines (mayor), Goodwin, Curry, Lukins and Ellison, councilmen, and that the contract was entered into pursuant to or by authority of the following resolution adopted at a special meeting of the council held on that day at the call of the mayor:

''Whereas the contract for street sprinkling the town of Tempe between the town of Tempe and C. A. Corbell has expired: It is hereby resolved that said contract be renewed for a period of one year, beginning June 1, 1912, and ending June 1, 1913, and that an agreement by and between the town of Tempe and C. A. Corbell be entered into, and the mayor is instructed to sign said agreement on the part of the town of Tempe, and the clerk is instructed to attest the same.''

It is admitted that Birchett, Fogal, Nielsen, Miller and Goodwin were elected members of the common council on May 27, 1912, to succeed the other members of the council, and that they qualified as such between the time they were elected and the thirteenth day of June, 1912, and took their office on June 13, 1912. It is otherwise shown that the votes cast at said election of May 27, 1912, were duly canvassed on May 31, 1912, and the said members declared elected. Tempe was incorporated under the provisions of Act No. 72 of the Laws of the Seventeenth Legislative Assembly of the Territory of Arizona (approved April 12, 1893), by the order of the board of supervisors of Maricopa county made and entered on the twenty-sixth day of November, A. D. 1894.

The plaintiff testified, in substance, that he performed the service of sprinkling the streets of the town of Tempe with a street sprinkler from June 1 to June 13, 1912, during 15 days, in performance of his part of the contract. He was asked this question by his counsel:

"Q. Why did you quit sprinkling the streets?

"A. The marshal told me they were going to take the wagon. I was ordered off.

"Q. Did anybody take your place?

"A. George Nichols was the one employed by the council."

The witness testified that he was offered about $40 for the work he did, and refused the offer; that he made written demand each month for about three months for his wages of $85 per month, and the council rejected his claim; that he sold the wagon and team on August 7, 1912, for $275; that he owned them at the time the contract was made, and had served the city as street sprinkler for the year previous to June 1, 1912. Plaintiff testified that he had been employed at many things since the thirteenth day of June, 1912, and had earned on contracts a large sum of money, but he was engaged in performing such contracts at the same time and without conflict with his duties of street sprinkler; that he could not get employment for his time not required for his contract business as profitable to him as the street sprinkling contract with defendant, because of the state of his health. He could perform the street sprinkling duties, but other occupations required more arduous labor in order to earn a like wage.

It is alleged that plaintiff entered upon the performance of the said contract on the first day of June, 1912, and performed the duties required of him for 15 days, at which time the defendant ousted plaintiff from his employment, and refused to further "recognize him as the street sprinkler of Tempe, and placed in his place and stead one George Nichols, and the said Tempe has further failed and refused, and still fails and refuses, to pay plaintiff his said sum of eighty-five dollars ($85.00) per month for said services, which plaintiff has been ready and willing at all times to perform, and would have performed but for the breach of said contract by the defendant. Plaintiff would show that by reason of the said breach of said contract that he is left without employment, and has been unable to obtain other employment which he is able to perform, and will not be able to obtain a position where he will be able to earn a sum equal to the sum which defendant agreed by its contract to pay him for serving in the capacity aforesaid."

Plaintiff further alleges that he was required to, and did, purchase a wagon and team at an outlay of $300, and without the employment the said wagon and team are useless, and have entailed great expense. He demands $1,200 as damages by reason of said breach of contract.

The cause was tried to the court without a jury, and resulted in judgment for the plaintiff in the sum of $225, from which judgment, and from an order refusing a new trial, defendant appeals.

Other facts appear in the opinion.

Mr. Chas. Woolf, for Appellant.

Messrs. Bullard & Carpenter, for Appellee.

CUNNINGHAM, J.—The only evidence in the record tending to prove that the defendant, town of Tempe, discharged plaintiff as its street sprinkler, and thereby violated any contract relation, is the testimony of the plaintiff as follows:

"The marshal told me they were going to take the wagon. I was ordered off. . . . George Nichols was the one employed by the council."

The plaintiff does not state who ordered him off; whether the marshal, of his own volition, ordered him off, or whether the town council ordered him off the wagon and the marshal was delivering its order. The town could not speak on the matter of discharging plaintiff except at a legal meeting. The corporate act of the municipality is performed through its council, and the minutes of its meeting are the evidence of the corporate act. No effort seems to have been made by any party to produce the evidence of such act. Perhaps no action was taken. Certainly, when the marshal told plaintiff that the council were "going to take the wagon," the inference is irresistible that no action had then been taken, but was contemplated. So far as the evidence goes, the marshal did not claim he was delivering plaintiff notice of any action theretofore taken by the council, nor did he claim to be acting in obedience to the council's orders in informing plaintiff of the council's intended action. At most, the information imparted had reference to the council's intention to discharge plaintiff, but, until some official act toward carrying out that inten-

tion was performed, the corporation was not chargeable with any breach of the alleged contract. If plaintiff acted upon the information of the intention of defendant to discharge him, and gave up his employment because the town marshal ordered him off the wagon, and the council had actually made no such order, nor given the marshal such instructions, then the marshal's order was without authority and ineffective for any purpose. The corporation acts only through its agents, that is, its officers. In order to bind the principal by an act, the agent (here both the council and the marshal) must act strictly within the scope of his agency.

In volume 2 of Dillon on Municipal Corporations, fifth edition, section 775, it is said:

"Public corporations may by their officers and duly authorized agents make contracts within the scope of their legislative powers the same as individuals and other corporations, in matters that appertain to the corporation; being artificial persons, they cannot contract in any other way. Public officers or agents are held more strictly within their prescribed powers than private general agents; and a contract made by a public agent within the apparent scope of his powers does not, if there be no estoppel, bind his principal in the absence of actual authority. A distinction has been held to exist in certain cases at least between the acts of an officer or agent of a public municipal corporation and those of an agent for a private individual. In cases of public agents the public corporation, it is said, is not bound unless it manifestly appears that the agent is acting within the scope of his real and lawful authority, or he is held out by the authorized and proper officials or body of the municipality as having authority to do the act, or is employed in his capacity as a public agent to make the declaration or representation for the government."

To work a breach of a valid contract by the municipality through the acts of its officers, and thereby fix a liability, would require no less authority. The town marshal must have been acting within the scope of his duty as an agent of the municipality to effectively order plaintiff off the wagon and discharge him from the service of the defendant, and plaintiff was chargeable with notice of the marshal's authority as an officer. As an officer, the marshal had no authority to

discharge the plaintiff and thereby cause a breach of the town's contract of employment of plaintiff. The town, acting through its common council, could or might have discharged the plaintiff, and, if the contract was a binding one, thereby fix a liability on the town by its breach. The evidence of plaintiff tends to prove that plaintiff abandoned the service, under the contract, upon being informed that "they" were going to take the wagon, and acquiesced in the marshal's order to deliver the wagon. If the marshal was acting under orders from the defendant, the authority could have been shown either by the corporate records, by the members of the council, or, perhaps, by the marshal's own testimony, if no objection to the same was interposed that would exclude his testifying and, in fact by any competent evidence, but neither course was attempted to prove the fact of authority, and certainly an intimation as to a supposed action to be taken by the council was not sufficient to work a breach of a valid contract. Certainly there is no evidence that the town council had theretofore or thereafter acted on the matter as the marshal informed plaintiff they were going to act.

The evidence of the breach of this contract is far from sufficient to sustain a judgment. The evidence sufficiently establishes the fact that the town marshal discharged the plaintiff, but his authority to do so is absent. The plaintiff must, therefore, be deemed to have abandoned the contract upon receiving information, through the marshal, that the council was going to take the wagon, and when he delivered the wagon to the marshal upon the marshal's order. For this reason we are justified in vacating the judgment; but, as the parties and the trial court seem to have proceeded upon the theory that the evidence was sufficient to establish a breach of the contract at some time by the town, we prefer to base our decision upon another reason, and one affecting the initial relation of the parties.

At the close of the evidence the defendant moved for judgment upon the grounds that the contract pleaded and in evidence is one for services to the defendant town, and that the members of the town council in office at the time the contract was made had no power under the law to enter into such contract as would bind the city and the council succeeding them in office. This position was assumed and consistently

asserted at all stages of the suit, and is preserved for decision on this appeal. The questions of the power of the common council to make this contract and to remove plaintiff during the contract period are thereby raised.

Article 3, section 1, subdivision 3, Act No. 72, Laws of 1893, confers the power upon councilmen " . . . to have . . .' the exclusive control over the streets, alleys, avenues and sidewalks of the town; . . . to widen, extend, straighten, regulate, grade, clean or otherwise improve the same. . . . "

By article 4, section 4, Act No. 72, *supra,* the common council "may appoint, from time to time, all officers and agents of the town, whose appointment is not herein provided for, and remove the same."

Exclusive control over the streets, to clean and otherwise improve them, fairly includes the exclusive right to cause the streets to be sprinkled. To accomplish this beneficial purpose the council must necessarily provide or appoint from time to time officers and agents to perform the service; provide the instrumentalities to accomplish this purpose. The officers or agents so appointed, while performing the duty of their appointment, are under the exclusive control of the common council making the appointment. The appointment of the street sprinkler for a definite term is not provided for by Act No. 72, but the right to appoint is incident to the performance of the duty required, and, having been appointed by the common council, he was subject to be removed by the council at its pleasure, unless the council, in appointing him, had the power to contract with him and bind the town to retain him a specified term.

This was attempted in this instance. The evident purpose of this contract was to bind the incoming elected council to retain in its service one selected for that particular duty by the outgoing council. The contract was intended to prevent the new council then elected from appointing another person, a person of its choice, to sprinkle the streets of Tempe for one year at the least. Such is the effect of this contract if it is a valid contract of the town. If the contract is valid, the new council was thereby deprived of the exclusive control over the streets, in the particular mentioned, from June 13, 1912, to June 1, 1913, so long as that work is performed by plaintiff satisfactorily to the street supervisor. By the terms

of the contract the street supervisor had delegated to him the right to determine whether the duty is properly performed by the plaintiff, and, if so, the council is powerless to control the matter of street sprinkling as to its manner or means of performance, and the council was thereby deprived of an express statutory right to control the streets and to remove its appointee. For one year all the voice the council had in the matter of control over the streets and their sprinkling was to pay plaintiff $85 per month. The street supervisor and street sprinkler controlled all other matters incident thereto. The council, composed of the outgoing members, placed the matter of sprinkling the streets beyond the control of the corporation. We are of opinion such contract is void as against public policy. The general rule, supported by a number of authorities, is that a contract extending beyond the term of office of the members of a public board, such as a board of county commissioners, a municipal board, or other like controlling body representing a municipal corporation, is, if made in good faith, ordinarily a valid contract. *Liggett* v. *Kiowa County,* 6 Colo. App. 269, 40 Pac. 475; *Pulaski County* v. *Shields,* 130 Ind. 6, 29 N. E. 385; *Webb* v. *Spokane County,* 9 Wash. 103, 37 Pac. 282; *Reubelt* v. *Noblesville,* 106 Ind. 478, 7 N. E. 206; *Wait* v. *Ray,* 67 N. Y. 36; *Picket Pub. Co.* v. *Carbon County,* 36 Mont. 188, 122 Am. St. Rep. 352, 12 Ann. Cas. 986, 13 L. R. A. (N. S.) 1115, 92 Pac. 524; *Manley* v. *Scott,* 108 Minn. 142, 29 L. R. A. (N. S.) 652, 121 N. W. 628. The ground upon which these decisions are based is that a board is a continuous existing corporation; while the personal membership changes, the corporation continues unchanged.

A well-recognized exception to the rule exists applicable to contracts in reference to matters which are personal to the board in their nature, and the contract limits the power of the succeeding members to exercise a discretion in the performance of a duty owing to the public. This exception to the rule is based upon the grounds of public policy. *Jay County* v. *Taylor,* 123 Ind. 148, 7 L. R. A. 160, 23 N. E. 752; *Hancock* v. *Craven County,* 132 N. C. 209, 43 S. E. 634; *Shelden* v. *Butler County,* 48 Kan. 356, 16 L. R. A. 257, 29 Pac. 759; *Coffey County* v. *Smith,* 50 Kan. 350, 355, 32 Pac. 30; *Millikin* v. *Edgar County,* 142 Ill. 528, 18 L. R. A. 447, 32

N. E. 493; *Vacheron* v. *New York,* 34 Misc. Rep. 420; 69
N. Y. Supp. 608; *Franklin County* v. *Ranck,* 6 Ohio C. D.
133, 9 Ohio C. C. 301, cited in note to 12 Ann. Cas. 990; 3
McQuillin on Municipal Corporations, sec. 1254, p. 2730;
*Egan* v. *City of St. Paul,* 57 Minn. 1, 58 N. W. 267.

In the last case cited the court said:

"The rule established by the decision of the lower court
is that public officers upon whom is devolved the duty of
selecting persons to render daily routine services of a very
common character about a public building have the power
to enter into contracts with these persons, which, both as to
terms of service and compensation, will bind the public, and
will deprive their successors in office from making any changes,
except for such causes as would relieve the master from the
obligations of a contract entered into with a servant. No
authority can be found which will sustain such a rule of law.
Should this doctrine prevail, the committee in question could
have contracted with plaintiff for his services as custodian
for a period of three, four or five years, . . . and the compen-
sation to be paid would, if the right be conceded at all, neces-
sarily be within the somewhat unlimited discretion of the
committee. Authorized to appoint a janitor, a custodian,
and, in general language, such other employees as may be
deemed necessary, the committee could, on any day during
the year, enter into a time contract with any employee, from
janitor down to scrubwoman, for no distinction can be made,
based upon the kind of work performed by the employee. If
a custodian can be permitted to bind the public with a con-
tract, so can the most menial employee about the premises.
Under this doctrine, places with excessive salaries attached
could be made for a host of political friends by the members
of an outgoing committee, and their successors would be pow-
erless—practically unable—to change the force, or to drop
persons not needed, or to reduce their compensation. A rule
of this kind in the public service would prove intolerable. It
is not even the law relating to public officers, for, where the
tenure of an appointive office is not prescribed by the Con-
stitution or by statute, the appointee holds at the will of the
appointing power and of himself, and he may be removed
by the former at pleasure. *In re Hennen,* 13 Pet. 225, 255
[10 L. Ed. 136, 151]; *People* v. *Board of Fire Commrs.,* 73

N. Y. 437. . . . To have charge and to exercise control over the building, the committee must be given full power, within reasonable limits, of course, to determine the number and kind of employees needed, in addition to the janitor and custodian, to select all employees, and to fix their compensation.''

The facts of this case place its decision within the exception to the general rule, and the contract sued upon is therefore invalid as against public policy.

The removal of the plaintiff by the incoming town council was not a violation of the contract, but was a valid exercise of the corporate power. In *Mack* v. *New York,* 37 Misc. Rep. 371, 75 N. Y. Supp. 809, the court lays down this rule:

''The rule is that where the power of appointment is conferred in general terms, and without restriction, the power of removal in the discretion and at the will of the appointing power is implied, and always exists, unless restrained and limited by some other provision of law''—citing many cases.

The court erred in overruling the motion for judgment for the reasons the plaintiff had no valid binding contract with the defendant, and therefore could suffer no injury by reason of defendant's refusal to perform; and no injury could result from defendant's ordering plaintiff discharged, notwithstanding the instrument is in form a contract of employment for one year.

The judgment is vacated and the cause remanded, with instructions to dismiss.

FRANKLIN, J., concurs.

ROSS, C. J., Dissenting.—All the learning of the majority opinion about the discharge of appellee is aside from, and foreign to, any question involved or discussed by either party to this appeal. Neither in its answer nor by its evidence does the appellant deny or combat the discharge by it of the appellee. On the contrary, its defense is based on the theory that the contract alleged did not bind it. On the trial it was assumed by both parties that appellant had discharged the appellee and placed another in his place; the former asserting it to be within its rights to do so. The insufficiency of the evidence was not raised by appellant in his motion for a new trial, nor is it assigned as error on appeal. It was not a dis-

puted or contested question on the trial of the cause, nor is the question properly before this court for disposition.

That the city council, as such, was charged with the duty of caring for the streets of appellant, and to that end empowered to engage the services of appellee, cannot well be questioned. He is not by virtue of such employment an "officer or agent" of the city, but a servant or employee. In 28 Cyc. 585, it is said:

"Generally, an officer takes an oath of office, while a mere agent or employee does not. The duties and services of a mere employee are purely ministerial, and he is not clothed with discretion nor with power to represent or bind the corporation. A municipal agent holds a position of trust, responsibility, and discretion. His relation is fiduciary, and he may contract with third persons in the name of the corporation, but he is distinguished from an officer in the fact that his position is not permanent, but temporary, and for a special object, and this distinction is often an important one."

There is no pretense or suggestion that there was any fraud or collusion, or that the contract was unfair or unreasonable, or that appellee was an unfit person for the work, or that he was not faithfully performing his part of the contract. His employment to sprinkle and clean the streets did not deprive the incoming council of its rights of superintendence over such work. If he faithfully performed his engagement, the council's duty to the public was as well performed through him as it could be through any other person. It is not a case of personal or professional service entitling the council to choose for itself persons to whose professional honesty, skill, and ability are to be delegated or confided important functions of the council. It is merely to drive a sprinkling wagon and clean the garbage from the streets under the supervision of the supervisor of the streets. He had done this for the year ending May 31, 1912. The new council was not to take office until June 13, 1912. The council, regardless of its personnel, had the power to employ someone to do this work of sprinkling its streets and caring for its garbage. I do not think this power was necessarily limited to the 13 unexpired days of their term, so long as they acted in good faith and for the best interests of the city.

In *Manley* v. *Scott,* 108 Minn. 142, 29 L. R. A. (N. S.) 652, 121 N. W. 628, the following question was answered in the affirmative:

''Has the board of county commissioners the power to make a contract with an employee which extends beyond the expiration of the terms of office of certain members of the board?''

The court said: ''While there is some apparent conflict in the authorities, it is reasonably clear that the weight of authority is to the effect that the board has such power.''

After discussing and distinguishing many of the decided cases for and against the proposition, the court concludes with this statement:

''The morgue-keeper is an employee, and not a public officer. His selection and employment for a definite and reasonable term in no manner interferes with the proper discharge of the duties of the board of county commissioners, nor does it deprive the board of full power and proper control over the things and matters submitted to its care by the statutes. It is conceded that the person employed by the board on December 31, 1908, was and is a suitable person to perform the duties required to be performed by him. Having the power at that time to employ a morgue-keeper, there is no implied limitation upon that power which restricts the possible term of employment to the time when any member or members of the board shall go out of office. The contract made in this instance was fair and reasonable, and no question of fraud or collusion is even suggested. Such being the facts, we can conceive of no principle of public policy which is violated by the contract in question. The contract being thus valid, the board, after the new members qualified, had no power to revoke or rescind it without cause being shown.''

This case is annotated in **L. R. A.** 1915E, 581, on the subject of the power of a board to appoint officer or to make a contract for term extending beyond its own term. See, also, note in 29 **L. R. A.** (**N. S.**) 652, on the same subject.