761 P.2d 133

CITY OF PHOENIX, an Arizona municipal corporation; City of Glendale, an Arizona municipal corporation; City of Scottsdale, an Arizona municipal corporation; City of Tempe, an Arizona municipal corporation; City of Mesa, an Arizona municipal corporation; and Town of Youngstown, an Arizona municipal corporation, Plaintiffs/Counterdefendants/Appellees,

and

Arizona Public Service Company, an Arizona corporation; Salt River Project Agricultural Improvement & Power District, a political subdivision and an agricultural improvement district of the State of Arizona, Other Indispensible Parties/Appellees,

v.

John F. LONG; John F. Long Homes, Inc., an Arizona corporation; John F. Long Properties, Inc., an Arizona corporation, Defendants/Counter-claimants/Appellants.

ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, Other Indispensable Parties/Appellees/Cross–Appellants,

v.

John F. LONG; John F. Long Homes, Inc., an Arizona corporation; John F. Long Properties, Inc., an Arizona corporation, Defendants/Counter-claimants/Appellants/Cross–Appellees.

No. 2 CA–CV 87–0318.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 11, 1988.

Review Denied Sept. 26, 1988.

**60**

Bill Stephens & Associates, P.C. by Bill Stephens and William H. Anger, Phoenix, for plaintiffs/counterdefendants/appellees City of Phoenix, City of Glendale, City of Scottsdale, City of Tempe, City of Mesa, and Town of Youngstown.

Snell & Wilmer by Warren E. Platt, Robert B. Hoffman, Martha E. Gibbs and John J. Bouma, Phoenix, for indispensable party/counterdefendant appellee/cross-appellant Arizona Public Service Co.

Jennings, Strouss & Salmon by M. Byron Lewis, Stephen E. Crofton and Kevin J. Worthen, Phoenix, for indispensable party/counterdefendant appellee Salt River Project Agricultural Imp. and Power Dist.

Streich, Lang, Weeks & Cardon by Wm. S. Hawgood II, Marcia Horn Yavitz, Paula G. Kirby and Joy E. Herr–Cardillo, Phoenix, for defendants/counterclaimants/appellants/cross-appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from a summary judgment in an action for declaratory relief involving the validity of a contract commonly referred to as Effluent Option Agreement (EOA) entered into between six cities (Phoenix, Glendale, Scottsdale, Tempe, Mesa, and the town of Youngstown) and two public utilities, Arizona Public Service (APS) and Salt River Project (SRP).

This lawsuit is the culmination of a series of attacks launched by John F. Long, John F. Long Homes, Inc., and John F. Long Properties, Inc. (the Longs) against the EOA.[1] The Longs' first challenge to the EOA took the form of a lawsuit alleging antitrust and certain other federal and state claims. That action was commenced in the federal district court in Phoenix in December 1983 against the cities, APS, SRP, and various other defendants. The federal court entered a judgment dismissing that action on November 22, 1985.

The second challenge to the EOA took place in Maricopa County Superior Court in the form of a lawsuit attacking the validity of the EOA under Arizona water law. Summary judgment was granted in favor of the utilities and cities on the water law challenge.

1. Long is a homebuilder in the Phoenix area. In 1981 and 1984, he applied for and was denied a permit to construct and operate a waste water plant in Phoenix.

The third attack upon the EOA occurred in September 1985, when the Longs initiated a letter-writing campaign directed at the mayors and city council members of the municipal signatories to the EOA. The Longs asserted that the EOA was void on a variety of grounds and demanded that the mayors and council members cease performing under the agreement.

In November 1985, after the mayors and council members had refused to agree to Longs' demands, the Longs attempted to file certain counterclaims and amended counterclaims in the action in the Maricopa County Superior Court. Leave to file those pleadings was eventually denied on December 19, 1985.

In reaction to the Longs' letter-writing campaign and the counterclaims that the Longs were then attempting to assert in the water law action, the cities filed this action for declaratory relief on November 22, 1985, against the Longs. APS and SRP were joined as indispensable parties. The cities sought a declaration that the EOA was a valid contract and that the Longs were barred by the statute of limitations, laches, estoppel and/or waiver from asserting any claims challenging the validity of the EOA. The Longs filed a counterclaim asserting that the EOA was void because (1) it extended beyond the terms of the city councils which entered into the agreement; (2) it constituted an unauthorized option of municipal property; (3) in entering into the EOA the cities failed to comply with the requirements of A.R.S. § 9–402 because the EOA constitutes an unlawful delegation or surrender of municipal powers. The cities, joined by the utilities, moved for summary judgment. The Longs filed a cross-motion for summary judgment. The trial court granted summary judgment in favor of the cities, APS and SRP. The trial court failed to grant APS its request for attorney's fees. This appeal by the Longs and cross-appeal by APS followed.

The relevant facts in this case are undisputed. In the 1950's and 1960's, in order to dispose of the residential sewage, the cities entered into various agreements which provided for the collection of the sewage at treatment plants located at 23rd Avenue and 91st Avenue in Phoenix. These agreements were amended in 1979 by cancelling any interest that the cities other than Phoenix had in the 23rd Avenue treatment plant.

In 1973, the cities entered into the EOA with APS and SRP. The EOA grants to the utilities four separate options, one for each of four planned reactor units at the Arizona Nuclear Power Project (Palo Verde), to purchase 35,000 acre feet of effluent per year or a total of 140,000 acre feet of effluent per year over the life of the agreement, which is 67 years. The most recent estimate of the total volume of effluent from the 91st Avenue and 23rd Avenue plants is 156,016 acre feet per year by 1985. There are no later figures contradicting this estimate and, as can be seen, there is now more effluent than the total amount optioned to the utilities.

Under the agreement, the options originally could be kept open by payment of one dollar per acre foot per year, increasing to two dollars in 1976 when construction permits were issued for Palo Verde. These sums are payable each year even though the utilities take no effluent and even though the effluent could be sold to others until needed at Palo Verde. When an option is exercised, the price of the effluent actually taken is set at 40 percent of the current price for Central Arizona Project water, but no more than $30 per acre foot nor less than $20 per acre foot. APS exercised the options for unit 1 and unit 2 in 1982, and as of 1985 the cities had received $1,880,318 under the EOA.

There are other provisions of the EOA which should be noted. Any unused options expire on December 30, 2000. The utilities are not required to use the effluent at Palo Verde but may use it at other facilities within or without the state. The cities are prohibited from constructing any new sewage treatment facilities, modifying existing contracts or entering into new contracts, if to do so would impair their ability to perform under the EOA. However, the cities may cease delivery of effluent under

the agreement if they have a critical need for it.

The effluent is used by Palo Verde to cool its reactors. Further treatment of the effluent for such use is necessary, but under the EOA the obligation to provide this treatment is upon the utilities and not the cities.

The effluent from the Phoenix plants not utilized by Palo Verde is discharged into the Salt River.[2] Past efforts to sell effluent have been unsuccessful, with one exception: 30,000 acre feet per year is delivered to the City of Buckeye by discharging the effluent into the Salt River.

Since entering into the EOA, the utilities have spent $290,000,000 to construct a pipeline for the delivery of effluent from the 91st Avenue treatment plant to the Palo Verde site, and to construct a waste water treatment plant to further treat the effluent so that it can be used as a coolant. Any further facts will be set forth in the body of this opinion as they relate to the various issues under review.

Appellants present the following issues: (1) Did the trial court err in concluding that the EOA lawfully binds future city councils? (2) Did the trial court err in concluding that the cities have the authority to enter into option contracts regarding municipal property? (3) Did the trial court err in concluding that the cities may sell effluent without regard to public bidding laws? (4) Did the trial court err in concluding that the EOA does not constitute an unlawful delegation or surrender of municipal powers?

### CONTRACTUALLY BINDING A CITY COUNCIL FOR MORE THAN ONE YEAR

■ The general rule is that a contract extending beyond the term of office of the members of a public board such as the city council is, if made in good faith, ordinarily a valid contract. The rationale for the rule is that such a body is a continuously exist-

ing corporation. While the personal membership changes, the corporation continues unchanged.

■ There is an exception to this general rule. Contracts for the performance of personal or professional services for the benefit of the board cannot extend beyond the term of its members. The general rule and the exception have long been recognized in this state. *Pima County v. Grossetta*, 54 Ariz. 530, 97 P.2d 538 (1939); *Town of Tempe v. Corbell*, 17 Ariz. 1, 147 Pac. 745 (1915). The EOA is not for the performance of personal or professional services for the employing officers and falls within the class of contracts which may be extended beyond the term of the contracting officers.

### NECESSITY FOR COMPETITIVE BIDDING AND THE USE OF OPTIONS

■ The Longs contend that A.R.S. § 9–402[3] and the respective city charters require the cities to put up the effluent for competitive bids before it can be disposed of. We do not agree.

The power to dispose of effluent is not controlled by A.R.S. § 9–402 or limited by any city charter. It comes from the broad powers given to the cities by the legislature to build, maintain and regulate sewers, see A.R.S. § 9–276(A)(3), (8), (9), and (12) and to operate utility undertakings which include the construction and operation of sewage disposal plants. See A.R.S. §§ 9–521 and 9–522. Other activities engaged in by the cities are also utility undertakings under this statute. These include the provision of electric lights or power, water and gas. Following appellant's theory would lead to the illogical conclusion that the cities could not sell electricity, gas or water without first putting it up for bid.

The cities' duty as far as effluent is concerned is different from its duties relative to the personal property mentioned in A.R.S. § 9–402 and the various city char-

---

**2.** Under the "Clean Water Act," 33 U.S.C. §§ 1251 et seq., Phoenix applied for and received a permit for discharges into the Salt River.

**3.** This statute provides that a city or town may sell or convey all or any part of its real or personal property but cannot do so until it first advertises for bids.

ters. Effluent is not property acquired, held or used by the cities for the benefit of the public. Rather, it is a noxious by-product of the treatment of sewage which the cities must dispose of without endangering the public health and without violating any federal or state pollution laws. How they dispose of it is left to the discretion of the cities. Indeed, the Phoenix City Charter, Chapter 4, § 2(41), explicitly grants the city the power to

> "[P]rovide for the sale of personal property unfit or unnecessary for the use of the city by public auction, sealed bids, or negotiation. All such sales of personal property shall be approved by ordinance of the City Council." [4]

There is no doubt that the cities may discharge the effluent into the Salt River without selling it. If they can discharge it into the Salt River without selling it, they can sell it without bids and grant options to purchase it.

### THE ALLEGED UNLAWFUL DELEGATION OF POWERS TO THE UTILITIES

■ The Longs' final argument is that the EOA is invalid because it constitutes an unlawful delegation or surrender of municipal power by the cities to the utilities. We do not agree. The cities have not delegated their control over sewage treatment or effluent disposal to the utilities. The cities, not the utilities, decide where to build satellite treatment plants, where to add interceptor lines to provide service to new customers, and how to dispose of effluent. For instance, the EOA has not prevented the cities from building smaller waste water treatment plants. Since 1973, new plants have been built in Mesa, Scottsdale and Glendale. In exercising their discretion over the operation of their sewage systems since the execution of the EOA, the cities have built regional treatment plants without consultation, approval or objection from the utilities. The cities have not given the utilities any power to decide where sewage service will be provided, nor

have they agreed to consult with the utilities prior to making any policy, operation or rate changes. The cities need only insure that when they do expand, they do not impair their ability to comply with the EOA.

Moreover, the EOA expressly recognizes the control of the cities. Section 7.3 of the EOA, for example, provides that nothing in the agreement "is intended to impair the implementation of the Master Plan," the plan prepared by the Maricopa Association of Governments in accordance with the federal Clean Water Act concerning future sewage treatment requirements.

### THE CROSS–APPEAL

In its cross-appeal APS contends that the court erred (1) in failing to rule that the Longs' counterclaims were barred by the statute of limitations and laches; (2) in failing to rule that the Longs lacked standing to assert their counterclaims; and (3) in refusing to grant them their costs.

In view of its finding that the EOA was valid, the trial court found it unnecessary to rule on the issues of statute limitations, laches and standing. We note that, although the issue of these three defenses has been made the basis of a cross-appeal, they are in reality cross-issues since the cross-appellant is not seeking to enlarge any of its rights. It cannot obtain any greater relief than it did in the court below, to-wit, a declaration that the contract was valid. See *DeLozier v. Smith*, 22 Ariz.App. 136, 524 P.2d 970 (1974); *Aegerter v. Duncan*, 7 Ariz.App. 239, 437 P.2d 991 (1968). Considering the issues of statute of limitations, laches and standing as cross-issues, we cannot see how the trial court abused its discretion in failing to address these issues when it did not have to do so.

■ The issue of the refusal of the trial court to grant APS its costs is the proper subject of a cross-appeal. When APS filed its application for costs with the trial court, the Longs did not object to the taxation of cost but only to the recovery of

---

4. The city charter governs over a conflicting state statute. See A.R.S. § 9–284. Thus, as to

Phoenix, § 9–402 would be in any event inapplicable.

transcript fees. The court awarded costs to the cities but refused to award any costs to APS because APS had not prevailed on all of its claims. This conclusion was erroneous. APS was brought into this case as an indispensable party. It aligned itself with the cities urging, inter alia, that the EOA be upheld as a valid contract. The court so ruled. The only other claim by APS that was not ruled on was its request that there be a declaration that there was no justiciable controversy, which would have had the effect of upholding the validity of the agreement. A party may be the prevailing party even though it asked for additional relief that was not granted. *Trollope v. Koerner*, 21 Ariz.App. 43, 515 P.2d 340 (1973). A.R.S. § 12–341 provides that a successful party to a civil action shall recover his costs. The assessment is mandatory. APS was successful in upholding the validity of the contract. The Longs did not prevail in any aspect of the case.

The judgment is reversed only to the extent of the failure to award costs to Arizona Public Service, and this case is remanded for the purpose of awarding APS their costs in the trial court. In all other respects the judgment is affirmed.

LACAGNINA, C.J., and HATHAWAY, J., concur.