817 P.2d 947

**CITY OF CASA GRANDE,**
**Plaintiff/Appellee,**

v.

**John TUCKER, Defendant/Appellant.**

**No. 2 CA–CV 90–0223.**

Court of Appeals of Arizona,
Division 2, Department B.

March 26, 1991.

Review Denied Oct. 22, 1991.*

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Michael F. Beers, Casa Grande, for plaintiff/appellee.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by James T. Braselton, Phoenix, for defendant/appellant.

## OPINION

FERNANDEZ, Chief Judge.

Appellant John Tucker appeals from the entry of summary judgment in favor of appellee City of Casa Grande declaring that Tucker is subject to sewer capacity fees imposed by the city. Solely because of the position taken by the city in this case, we conclude that appellant is not subject to the fees.

In 1958 Tucker's predecessors in interest, owners of a 160–acre parcel of property in Pinal County, entered into a Contract and Grant of Easement that permitted the city to construct, operate, and maintain an outfall sewer line through a 15–foot strip of the property. In exchange for the easement, the city agreed as follows:

> The Vendee hereby covenants and agrees that if at any time in the future Vendors, their successors or assigns should subdivide [the property], then in such event the right and permission is hereby granted to Vendors, their heirs, devisees, legatees or assigns to tie one trunk sewer line serving the above described property into the main outfall sewer line of the Vendee, at no expense to Vendors.

According to the joint statement of undisputed facts submitted by the parties to the trial court, Tucker has been developing a mobile home and recreational vehicle park on the property since 1976. Sometime in 1976 Tucker constructed one trunk sewer line connection to the city's system and paid no connection charges pursuant to the contract.

According to the affidavit Tucker submitted in connection with the counter-motions for summary judgment, the first phase of his development was a mobile home park on 26 acres of the property. When he began the fourth and final phase of the development in 1986, the city imposed a capacity charge for connecting the lots in that phase to its sewer system. The charge was enacted by city ordinance in 1985. Tucker refused to pay, citing the 1958 contract,[1] and the city sued for a declaratory judgment that he is subject to the charge. Both parties filed motions for summary judgment, and the trial court agreed with the city's position.

The parties have raised constitutional issues on the city's power to enter into contracts with private citizens regarding governmental functions and its power of taxation. The city also argues that the constitution prohibits it from making a gift of public funds and contends that the consideration for the 1958 contract was inadequate. Tucker raises the issue of equitable estoppel. The case, however, is actually one of simple contract interpretation.

The contract provides that Tucker, as the successor in interest to the vendors, was granted the right "to tie one trunk sewer line" serving the property into the city's sewer line at no expense. The undisputed facts are that Tucker constructed a trunk sewer line that he tied into the city's sewer line in 1976 and was charged no connection fees.[2] From the plain language of the contract, it would appear that the contract provision had thus been satisfied, and the city had fully performed its obligations.

---

1. It should be pointed out that the only fees involved here are connection fees. The occupants of the mobile home lots pay monthly fees for use of the city sewer system. In fact, because the development is outside the city limits, the residents pay user fees at 150% of the rate charged city residents.

2. The record contains no indication of the exact connections Tucker requested in 1986, whether they are to the trunk line he built in 1976 or to a new trunk line. We assume, in the absence of evidence to the contrary, that they are to the existing trunk line.

There would then be no merit to Tucker's claim that he is not liable for the capacity charges imposed by the city in 1986. Indeed, one of the city's contentions on appeal is that the contract has been fully performed.

However, that argument by the city must be viewed in light of its complaint allegations and the joint statement of undisputed facts. In its complaint, the city alleged:

The dispute between the parties centers upon the application of paragraph IV of the Contract and Grant of Easement to the 'Capacity Charge.' *The parties agree that Defendant cannot be assessed a 'sewer connection fee';* however, Plaintiff maintains that Defendant must pay the 'Capacity Charge' while Defendant maintains that paragraph IV of the Contract and Grant of Easement exempts him from the 'Capacity Charge.'

(Emphasis added.) The joint statement of undisputed facts includes the following:

9. Tucker and the City agree that, pursuant to the terms of the Contract, Tucker cannot be assessed a 'sewer connection fee' (as defined in the City Code) with regard to any future or existing development on the Property.

Those statements are contrary to the city's assertion that the contract has been fully performed. If the contract has been fully performed, then Tucker would be subject to all sewer connection fees required by the city ordinance.

Next, we must examine the city ordinance that created the disputed charge. It reads in part as follows:

The following charges shall be paid prior to any connection being made to the public sewer system of the City of Casa Grande:

1. Residential Connection Charges
   Capacity charge per family
     unit                                  $336.00
   Direct Connection Fee            50.00
   Inspection Fee                       15.00

Because the capacity charge appears in the section of the ordinance entitled "Connection Charges" and because the ordinance provides that no connection can be made until each of the three listed charges is paid, it is clear that the capacity charge is a connection fee. Because the city's position is that Tucker cannot be charged the direct connection fee and the inspection fee under the contract, then we see no basis upon which the city can assess him the capacity charge.

■ The city discusses at great length the reason the capacity charge was enacted and the injustice that would arise if Tucker is not required to pay his fair share of the charge. We do not address any of that discussion, however, because it is not included in the joint statement of undisputed facts and is not the subject of any affidavit in the record. *See Borbon v. City of Tucson*, 27 Ariz.App. 550, 556 P.2d 1153 (1976). Thus, the record contains no competent evidence as to the reason the charge was adopted.

■ Because we have concluded that the capacity charge is a sewer connection fee and because the city's position is that the contract prohibits it from imposing on Tucker the other two connection fees, we agree with Tucker that he is not subject to the capacity charge. Therefore, we must address the city's arguments that the contract is unenforceable if it is interpreted in that manner.

■ The city argues first that it cannot contract away its discretionary rights of control over governmental functions, citing *Fidelity Land & Trust Co. v. City of West University Place*, 496 S.W.2d 116 (Tex.Civ. App.1973). In that case, the city had obtained an easement to run its sewer line across the appellant's property. The easement provided that the appellant would then have the privilege of "making connections, without charge, direct and/or through laterals" to the city's sewers, and the city would pay the cost of supplying and installing any manholes required for those connections. *Id.* at 117. The court held that the deed was void because the city could not "bind itself in such a way as to effectively lose control over the operation of its sewer system." *Id.* at 118. One of the arguments the city raised there was that the agreement was so "vague and

indefinite as to time of performance, number of connections, types of buildings to be served, area to be served and other pertinent details that it [wa]s void and unenforceable." *Id.* at 117.

We find that case inapplicable for several reasons. First, the agreement here calls for Tucker "to tie one trunk sewer line serving the ... property into the [city's] main outfall sewer line" at the time he subdivided the property. Thus, the language at issue here is not the broad, undefined language employed in *Fidelity Land & Trust.* Moreover, we see no way the language utilized here can be construed to result in the city "effectively los[ing] control" over its sewer system. *Fidelity* at 118. The contract involved here refers to only one specific trunk line. Tucker paid all construction costs required for connection of that line to the city's line. Finally, the rule in Arizona on cities' authority to contract as to governmental functions is not the same as the Texas rule. In *City of Phoenix v. Long,* 158 Ariz. 59, 761 P.2d 133 (App.1988), this court rejected a homebuilder's contention that a 67-year contract providing for several cities to sell effluent to two public utility companies was "an unlawful delegation or surrender of municipal power" even though the contract prohibits the cities from constructing new sewage treatment facilities or from modifying existing contracts or entering new ones if those actions would impair their ability to perform under the effluent contract. *Id.* at 63, 761 P.2d at 137. The contract at issue here does not call for the surrender of any of the city's control over its sewer system.

 The city also argues that it cannot, under the constitution, contract away its power of taxation. Ariz. Const. art. IX, § 1. We do not dispute that fact. However, the charge at issue is a fee, not a tax.

A tax is imposed upon the party paying it by mandate of the public authorities, without his being consulted in regard to its necessity, or having any option as to its payment. The amount is not determined by any reference to the service which he receives from the government, but by his ability to pay, based on property or income. On the other hand, a fee is always voluntary, in the sense that the party who pays it originally has, of his own volition, asked a public officer to perform certain services for him, which presumably bestow upon him a benefit not shared by other members of society.

*Stewart v. Verde River Irrigation & Power District,* 49 Ariz. 531, 544-45, 68 P.2d 329, 334-35 (1937).

 Finally, the city argues that the contract is void because it violates the constitutional prohibition of its making a gift of public funds. Ariz. Const. art. IX, § 7. In making that argument, however, the city cites neither case authority nor any supporting evidence from the record. Instead, it merely argues that because it could have obtained the easement through eminent domain proceedings, "[i]t is ... unrealistic to assume that the amount paid in a condemnation action would have exceeded the cost of one acre of land since the easement would not constitute a full taking and since the sewer line would have added some value to the remainder of the property." That argument ignores the fact that no specific values have been included in the record and that courts do not ordinarily examine the adequacy of consideration, *Carroll v. Lee,* 148 Ariz. 10, 712 P.2d 923 (1986), nor do they assume disproportionality of consideration. *Wistuber v. Paradise Valley Unified School District,* 141 Ariz. 346, 687 P.2d 354 (1984). It also ignores the fact that the city received a sewer easement as a result of the agreement.

The judgment is reversed and the case is remanded with directions to enter judgment in favor of Tucker. Appellant will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App. P., 17B A.R.S.

HOWARD, P.J., and JAMES C. CARRUTH, Superior Court Judge **.

** A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the