[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: EXCEPTIONS TO THE REPORT OF THE ATTORNEYTRIAL REFEREE
The plaintiff, a partnership of Certified Public Accounts, instituted the present action seeking to recover damages from the defendant Board of Education for breach of contract. The plaintiff alleged that it offered to provide accounting management consulting services to the defendant for three separate years effective July 1, 1991 through June 30, 1992; July 1, 1992 through June 30, 1993; and July 1, 1993 through June 30, 1994. The proposals were approved by the Board of Education and the plaintiff alleged that it performed the services called for in the agreement covering the period of July 1, 1991 through June 30, 1992 and that it was paid for those services.
The plaintiff further alleged that it informed the defendant, in June of 1992, that it was prepared to commence work for the period 1992 through 1993; that the defendant breached the contract with the plaintiff for the fiscal year 1992-1993; and that the defendant has indicated its intention to breach the contract for the year 1993-1994.
The case was referred to an Attorney Trial Referee ("A.T.R.") who conducted a bifurcated hearing on the issue of liability. The A.T.R. issued a report finding the issues for the plaintiff. The parties then stipulated as to the amount of damages. The case is presently before the court on the defendant's objections to the report and the plaintiff's Motion for Judgment in accordance with the report.
The A.T.R. conducted an evidentiary hearing, made a finding of facts, and recommended that damages be awarded to the plaintiff for the defendants breach of the contracts between the parties. The defendant asserts that the contracts for the final two years are not binding upon the defendant Board as a matter of law on the grounds that they are governmental as distinguished from proprietary in nature and on the grounds that the contracts involve personal professional services and therefore cannot be binding upon a subsequent Board.
"Statutes and charters sometimes authorize municipal Boards to make contracts which will extend beyond their own official term and the power of the legislature in this respect is well settled. CT Page 10936 Respecting the binding effects of contracts extending beyond the terms of officers acting for the municipality, their exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist. Consequently, although a contrary rule prevails as to contracts relating to business affairs, it is generally held that, independent of statute or charter provisions the hands of successors cannot be tied by contracts relating to governmental matters." 10 A McQuillan, Municipal Corporations, § 29.101, p. 44 (3rd Ed. 1990). See, City of Hazel Park v. Potter,426 N.W.2d 789, 792 (Mich.App. 1988).
The A.T.R. has set forth findings establishing the facts hereinafter set forth. The plaintiff is a Certified Public Accounting Firm and the multi-year contracts at issue involve educational goods and services. The plaintiff offered to provide professional management consulting services and the a proposal took on the status of "Professional Personal Service Contracts". The scope of the plaintiff's work was to provide management consulting in the areas of accounting and auditing inclusive of the review and evaluation of the systems of internal accounting and administrative controls including review and assistance in finalizing expenditures. The role also included the monitoring and analysis of actual budgeted revenues. The scope of the work under the agreements also included presentations to the board concerning matters involving accounting and auditing which included answering questions raised by the members concerning audit reports, representation letters and any other accounting related documents requiring approval by the board or the Superintendent. The functions of the plaintiff also included an in-depth analysis of the budget including consolidation by category, a summary for the Superintendent and recommendations for review.
The plaintiff's specific responsibilities included a review of the capital budget and verification that the contracts for which services were contracted were proper and that the services were appropriately rendered. It is clear, as the A.T.R. found, that the contractual arrangements constituted professional personal service contracts.
Between the date that the contracts were approved by the Board CT Page 10937 and the date that they were rescinded, there had been a change in the Superintendent of Schools. There are eight members of the Board including the Mayor who were appointed by the Mayor of the City of New Haven. The terms of the members of the Board of Education commenced on the 3rd member of September of each year and a potential existed for new Board members to join the Board each year as provided in the City Charter. Four of the eight members who were on the Board on July 1, 1991 still remain as members of the Board and there have been changes in the membership of the board as detailed in the A.T.R.'s report.
It is clear from the finding of the A.T.R. that the services provided by the plaintiff to the defendant are personal and professional in nature and include not only review and analysis but also recommendations to the defendant and responding to any inquiries that the members of the defendant may have with respect to accounting matters. Numerous courts have made determinations as to when a public officer or a municipal board may, or may not, execute valid contracts which bind their successors. See generally,10 A McQuillan, Municipal Corporations (3rd Ed. 1990) § 29.101. "Where a contract in question is a unitary one for the doing of a particular and specified act, but its performance may extend beyond the term of the officers making it, if it appears that the contract was made in good faith and in the public interest it is not void because it will not be completed during the term of those officers. If, on the other hand, the contract is for the performance of personal or professional services for employing officers, their successors must be allowed to choose for themselves those persons on whose honesty, skill and abilities they must rely." Tryon v.Avra Valley Fire District, 659 F. Sup. 283, 285 (D.Ariz. 1986), quoting Pima County v. Grosetta, 54 Ariz. 530, 97 P.2d 538 (1939). See also, Figuly v. City of Douglas, 853 F. Sup. 381 (D.Wyo. 1994); City of Phoenix v. Long, 761 P.2d 133 (Ariz.App. 1988);Harrison Central School District v. Nyquist, 400 N.Y.S.2d 218 (1977);Annot. 70 ALR 794, 799 (1931, Annot. 149 ALR 334 (1994) and Supplemental Decisions. The statement by the court in the Harrison
case, supra, is appropriate here: "the confidential and personal nature of the functions performed by a school board attorney argues against allowing a school board to bind its successor." (p. 220) The services performed by the plaintiff in the present case are personal professional and confidential in nature and therefore one board should not be allowed to execute a contract which binds future boards with respect to contracts of this nature.
In the present case, the court holds that the Board, in 1991, CT Page 10938 did not have the power to execute contracts binding upon subsequent boards. The membership of the Board did in fact change, as it was subject to change, by the time the contract was rescinded in November of 1992. The Board, as constituted in 1992, was entitled to determine for itself the individual or entity upon whom it would rely for personal professional services without being bound by determinations made by a Board composed of different members. Therefore, the plaintiff's Motion for Judgment in accordance with the report of the A.T.R. is denied.
The defendant has filed exceptions to the report of the A.T.R. asserting the A.T.R. erred in failing to correct certain findings as requested by the defendant. For the most part the corrections sought relate to conclusions of law and are not material to the ruling of the court and are, therefore, overruled.
The A.T.R. found that the plaintiff submitted a letter to the defendant in June of 1992 indicating that it was prepared to commence work for the 1992-1993 period and scheduled a start up date of July 13, 1992. The finding also states that the plaintiff visited the Comptroller's Office on July 13, 1992 and that a partner of the defendant "testified" that he did not know the contract had been rescinded. The finding also indicates the contract was not rescinded until November of 1992. The trial memorandum of the plaintiff asserts a claim that the contract was in effect and that the defendant was bound to honor the contract for at least the 5 month period from July 1, 1992 until November 23, 1992 when the contract was rescinded.
It is appropriate, in some circumstances, for the court to refer the matter back to the A.T.R. who heard the original case. See Practice Book § 443; Plato v. Kapur, 22 Conn. App. 282 (1990);Bishop v. Hastings, 7 Conn. L. Rptr. 218 (1992) (Fuller, J.);Iannacone v. Sanchez, 3 Conn. L. Rptr. 121 (1991) (Lewis, J.).
Accordingly, the Court refers the matter to the A.T.R. who originally heard the case for a determination as to whether the contract was in effect until the letter rescinding the contract in November of 1992 and for a determination, not inconsistent with this opinion, as to whether the plaintiff is entitled to damages for that period.
RUSH, J. CT Page 10939
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 10940
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 10941
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 10942