Howard Paul GREENAWALT,
Plaintiff–Appellant,

v.

SUN CITY WEST FIRE DISTRICT,
an Arizona Fire District,
Defendant–Appellee.

No. 00–15503, 00–16837.
D.C. No. CV 98–01408–ROS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2001.

Decided Oct. 11, 2001.

Before POLITZ,[*] W. FLETCHER and FISHER, Circuit Judges.

### MEMORANDUM [**]

 Arizona's Employment Protection Act ("EPA"), Ariz.Rev.Stat. § 23–1501, does not bar Greenawalt's action. According to Arizona law, statutes are presumed not to apply retroactively unless they contain an express statement of ret-

roactive intent. Ariz.Rev.Stat. § 1–244. This rule only applies to substantive enactments, however; statutorily enacted procedural requirements may be given retroactive application, because litigants have no vested rights in the application of particular procedures. *Aranda v. Indus. Comm'n,* 198 Ariz. 467, 11 P.3d 1006, 1009 (2000) (en banc). "Substantive law creates, defines and regulates rights while a procedural law establishes only the method of enforcing such rights or obtaining redress." *Id.* (quoting *Hall v. A.N.R. Freight Sys., Inc.,* 149 Ariz. 130, 717 P.2d 434, 442 (1986)) (internal quotation marks omitted). Under this rubric, the EPA clearly implicates substantive rights. The statute does not merely explain how an employee may go about bringing a claim for breach of contract; it defines substantively when a terminated employee may bring such a claim.

Defining the EPA as a substantive statute does not end the inquiry, however, because "a substantive legal right may be subject to retroactive impairment before it becomes a vested right." *Id.* at 1010. "A vested property right is a right which is 'actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust.'" *Id.* (quoting *San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 972 P.2d 179, 184 (1999)). To the extent Greenawalt alleged he had an employment arrangement under which he could only be fired for cause, his right to job security vested with the promulgation of the District's Statement of Policy ("Policy"), which occurred within a year of his move from Rural Metro to the District in 1994. The EPA was enacted in 1996, after any rights created by the Poli-

---

[*] The Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

cy had vested. Accordingly, the District cannot rely on the EPA to divest Greenawalt of these rights retroactively.

We next address whether Greenawalt is correct that genuine issues of fact should have precluded the district court's holding that Greenawalt was an at-will employee. Under Arizona common law, employment contracts are presumed to be at-will, but "an employee can overcome this presumption by establishing a contract term that is either expressed or inferred from the words or conduct of the parties." *Demasse v. ITT Corp.*, 194 Ariz. 500, 984 P.2d 1138, 1143 (1999) (en banc). As both parties acknowledged during argument, construction of ambiguous contracts is submitted to a jury under Arizona law.

Such ambiguity is present with regard to Greenawalt's employment relationship. The section of the Policy concerning disciplinary procedures indicates employment is at-will, and specifies that "discharge may occur 'for cause' or for 'no cause.'" Under the section outlining terminations, however, the Policy implies that discharge may only be for cause: "An involuntary termination is defined as the termination of an employee without benefit of his/her request. Involuntary termination's [sic] are one of two classes: A. Dismissal for gross infraction of rules/regulations or failure to maintain minimum certifications. B. A Reduction in Force . . . ." Moreover, the Rural Metro handbook from which the Policy was in large part copied contained a number of visible at-will disclaimers. Given the manner in which the Policy was created, the absence of all but one of these disclaimers (noted above) in the Policy creates an issue of fact as to the parties' relationship. Because such ambiguity is present, the nature of Greenawalt's employment should have gone to a jury.

On remand, the proffered expert testimony of expert witness Kathy Gromoll is inadmissible under Federal Rule of Evidence 702 on the record before us. Expert testimony must be relevant and reliable, and it must relate to some form of specialized knowledge. *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir.2001). It may not include unsupported speculation and subjective beliefs. *Id.* Gromoll's report is written from the perspective of "what a good handbook should have" in order to make clear to a firm's employees what their employment status is, rather than what an employer must do under Arizona law to preserve at-will status for its employees. Thus, we hold it is not relevant to the disputed issues. To the extent Gromoll purports to compare the Policy with "the standard practice of Arizona employers for such disclaimers," her deposition testimony reflects that she is not in a position to make such a determination.

REVERSED AND REMANDED.