**Howard Paul GREENAWALT,**
**Plaintiff,**

v.

**SUN CITY WEST FIRE DISTRICT,**
**an Arizona Fire District; et al.,**
**Defendant.**

**No. CIV–98–1408–PHX–ROS.**

United States District Court,
D. Arizona.

Jan. 21, 2003.

Kraig J. Marton, Kelly Brown, Jaburg & Wilk, PC, Phoenix, AZ, for Plaintiff.

Tara Lynn Jackson, Christina Louise Bannon, Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, AZ, for Defendant.

## ORDER

SILVER, District Judge.

This action arose out of the termination of Plaintiff firefighter, Howard Paul Greenawalt, by Defendant Sun City West Fire District ("District"). Plaintiff filed a four count Complaint alleging violations of due process, 42 U.S.C. § 1983, wrongful discharge, and breach of contract, The Court granted summary judgment in favor of Defendant on February 10, 2000 that was reversed and the case remanded by the Ninth Circuit. Defendant now moves for summary judgment on all remaining counts, arguing that any employment contract made by a prior board of the District fails to bind any successor board. Plaintiff responds that (1) the motion fails procedurally; (2) the law of the case doctrine precludes consideration of the motion; and (3) the successor board doctrine applies only to direct personal service contracts. Alternatively, Defendant moves for dismissal on the due process claims for failure to state a claim. For the reasons stated below, both Defendant's Motions are denied.

## BACKGROUND

This is a federal question and supplemental jurisdiction case arising from an

employment termination. The parties agree that Arizona law governs the state law claims.

## A. PROCEDURAL HISTORY

On May 29, 1998, Plaintiff brought this action against his former employer, Sun City West Fire District,[1] in the Maricopa Superior Court, alleging (1) violation of due process; (2) violation of 42 U.S.C. § 1983; (3) public policy wrongful discharge; and (4) breach of contract. On July 31, 1998, Defendant removed the case to this Court (Doc. # 1), and on August 3, 1998, Defendant filed its Answer. (Doc. # 3).

On May 21, 1999, Defendant filed a Summary Judgment Motion (Doc. # 49) and accompanying Statement of Facts (Doc. # 50), requesting summary judgment on all claims because Plaintiff constituted an "at-will" employee. On July 8, 1999, Plaintiff responded to this Motion. (Doc. # 68 and Doc. # 69). On July 16, 1999, Plaintiff filed a Supplementation of Record. (Doc. # 70). Defendant replied on July 30, 1999. (Doc. # 73).

On January 6, 2000, the parties stipulated to dismissal of Plaintiffs wrongful termination claim. Next, the Court granted summary judgment on the three remaining claims in its February 10, 2000 Order, finding that Plaintiff constituted an at-will employee. (Doc. # 99). Plaintiff appealed this Order to the Ninth Circuit, which reversed and remanded, holding that a question of fact existed over Plaintiffs at-will status. (Doc. # 121).

After remand, the Court issued a second Rule 16 Scheduling Order on April 22, 2002 that granted additional time for discovery, as well as set new dates for filing motions in limine, trial memoranda of law, and a joint pretrial order. (Doc. # 130).

However, this Order failed to address dates for filing dispositive motions. Therefore, the original October 22, 1998 Rule 16 Scheduling Order date of June 15, 1999 for filing dispositive motions remains in effect. (Doc. # 12). Consequently, Defendant filed a Motion to Amend Rule 16 Scheduling Order on September 6, 2002. (Doc. # 163). Plaintiff responded to this Motion to Amend on September 12, 2002, arguing that substantial prejudice precludes such an amendment. (Doc. # 168). Defendant filed no Reply.

On August 16, 2002, Defendant moved for summary judgment on the three remaining claims, arguing that Plaintiff cannot establish that a valid enforceable employment contract existed at the time of his termination because any employment contract made by a prior board of the District fails to bind any successor board. (Doc. # 152). Plaintiff responded that (I) the motion fails procedurally; (2) the law of the case doctrine precludes consideration of the motion; and (3) the successor board doctrine applies only to direct personal service contracts. (Doc. # 165). Defendant filed a Reply on September 26, 2002, in which it incorporated by reference its Motion to Amend the Rule 16 Scheduling Order. (Doc. # 173).

Defendant also filed on July 26, 2002 a Motion to Dismiss or Alternatively for Summary Judgment on Plaintiffs Due Process Claims. (Doc. # 145). However, Defendant failed to file a statement of facts ("SOF"). On August 28, 2002, Plaintiff filed a Response. (Doc. # 160). Defendant replied on September 16, 2002. (Doc. # 169). On that same date, Defendant filed its SOF. (Doc. # 170). Interpreting Defendant's filing of its SOF as untimely, Plaintiff filed a Motion to Strike on Octo-

1. Plaintiff originally named Donald F. Johnston as a Defendant, but on August 12, 1999, the Court granted the parties stipulation to dismiss with prejudice all claims against Johnston. (Doc. # 81).

ber 4, 2002. (Doc. #174). Plaintiff responded on October 11, 2002. (Doc. #175). Defendant filed no reply.

## B. UNDISPUTED FACTS

In 1981, Arizona created the Defendant Fire District pursuant to the provisions of Title VII of the Arizona Revised Statutes to provide fire protection and emergency medical services to Sun City West. (Def.'s May 21, 1999 Statement of Facts "1999 SOF" ¶1) (Doc. #50). An elected District Board administers the Defendant Fire District. A.R.S. § 48–803. Pursuant to A.R.S. § 48–805, the District Board determines the compensation payable to district personnel and employs necessary personnel to carry out District functions.

On April 5, 1993, and again on January 14, 1994, the District Board sent Plaintiff letters offering Plaintiff employment. (Def.'s 1999 SOF ¶¶1–4). Plaintiff contends that the language contained in these letters welcoming Plaintiff into "our family" created an employment contract wherein he could only be terminated for cause. At the time these letters were sent to Plaintiff, the District Board consisted of the following members: James Maley, Robert Shaw, Raymond White, Frank Hamblet, and Charles Frankel. (Def.'s August 16, 2002 SOF ¶1) (Doc. #153).

In support of his claims, Plaintiff also relies heavily on the "Statement of Policy, Fire District of Sun City West," which the District Board amended and adopted in August of 1995. (Def.'s 2002 SOF ¶2; Complaint ¶15). The members of the District Board at that time remained the same as listed above. (Def.'s 2002 SOF ¶2).

On January 9, 1997 F. Lee Paul replaced Frank Hamblet on the District Board. (Def.'s 2002 SOF ¶3). Five months later, Defendant terminated Plaintiffs employment on May 30, 1997. (Complaint ¶16).

## ANALYSIS

### A. LEGAL STANDARDS

#### 1. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see Jesinger, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323–24, 106 S.Ct. 2548. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. 2548; see Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. Celotex, 477 U.S. at 323, 106 S.Ct. 2548.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's]

pleadings, but ...must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *see also* Rule 1.10(1)(1), Rules of Practice of the United States District Court for the District of Arizona ("Any party opposing a motion for summary judgment must ...set[ ] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party."). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. However, because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge, ...[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

**2. Motion to Dismiss**

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "The federal rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though "'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.*

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving Party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519,

526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998); *see Jones v. Cmty. Redev. Agency,* 733 F.2d 646, 649–50 (9th Cir.1984); *W. Mining Council,* 643 F.2d at 624.

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187, at 9–46 (2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.,* 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47.

## B. ANALYSIS

### 1. Summary Judgment Motion on All Remaining Claims

Plaintiff argues that the Court should not grant summary judgment because: (1) the motion fails procedurally; (2) the law of the case doctrine precludes consideration of the motion; and (3) the successor board doctrine applies only to direct personal service contracts. (Doc. # 165). Despite the unpersuasive nature of Plaintiffs pleadings, most likely a consequence of Plaintiffs belief that the Court would not consider the Motions or that the Court would dismiss Defendant's arguments within in them as unworthy of consider-

ation, the Court has independently found merit in Plaintiffs last argument. Therefore, Defendant's Summary Judgment Motion on All Remaining Claims will be denied.

### a. Defendant's Motion Conforms with Proper Procedure

Plaintiff contends that because Defendant filed its Summary Judgment Motion after the deadline for dispositive motions set by this Court four years ago in a Rule 16 Scheduling Order, the Court is precluded from considering the motion. Plaintiff argues that no good cause exists for granting Defendant's Motion to Amend the Scheduling Order. The Court disagrees.

██ While the district court maintains the discretion to decide whether to grant or deny a motion to amend, Fed.R.Civ.P. 15(a) specifies that such "leave shall be freely given when justice so requires." *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). The standard for granting amendments changes and becomes progressively more difficult to meet as litigation proceeds toward trial. Rule 16(b) provides that "[a pretrial] schedule shall not be modified except by leave of the judge or a magistrate when authorized by district court rule upon a showing of good cause." Fed.R.Civ.P. 16(b).

Unlike Rule 15's liberal policy, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonable be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply ad-

ditional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) (citations omitted) (quoting Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment)).

While no reported cases in the Ninth Circuit apply the above standard to allow a party to amend a scheduling order to file a *summary* judgment motion after the deadline set for filing dispositive motions, several other circuit court cases allow such amendments. *See, e.g., Mason v. Louisville Police Department,* 8 Fed.Appx. 326, 328 (6th Cir.2001) (allowing amendment to scheduling order for filing of summary judgment motion because "Defendants alleged good cause for the late filing, no trial date had been set, and the delay did not cause any prejudice"); *Hernandez–Loring v. Universidad Metropolitana,* 233 F.3d 49, 51 (1st Cir.2000) (finding good cause to amend scheduling order date for filing dispositive motions based on opposing party's own discovery delays); *Jones v. Coleman Co., Inc.,* 39 F.3d 749, 753–54 (7th Cir. 1994) (upholding magistrate judge decision to allow amendment to scheduling order to permit filing of summary judgment motion because of "change in circumstances" triggered by settlement with one of the parties); *Spiller v. Ella Smithers Geriatric Center,* 919 F.2d 339, 343 (5th Cir.1990) (holding no abuse of discretion by trial judge who implicitly granted a motion to amend scheduling order when he granted summary judgment filed after scheduling order deadline).

■ In this case, the Court issued the Scheduling Order setting a deadline of June 15, 1999 for dispositive motions four years ago, on October 22, 1998. Subsequently, the Court granted Defendant's first summary judgment motion, Plaintiff appealed the decision, and the Ninth Circuit reversed and remanded the case. Because of the interruption in the original scheduling of the litigation caused by the Ninth Circuit appeal and the remand, the Court finds good cause for allowing Defendant's additional summary judgment motions. At the time of Defendant's first summary judgment motion, the Court imposed no limitations on the number of *summary* judgment motions that could be filed. Further, the reversal was unanticipated by Defendant, and Defendant's first *summary* judgment motion was expected to completely resolve the litigation.

Moreover, Plaintiffs response to the Motion to Amend simply provides a one line objection, alleging "substantial prejudice in having to respond to motions raising legal issues that have not been previously raised or asserted on a timely basis." (Response p. 1) (Doc. # 168). This factually unsupported statement is unpersuasive. Defendant filed the Summary Judgment Motion prior to the Court scheduling a trial date, and Plaintiff timely responded to it. Finally, the Motion required no additional discovery by either party and it raises significant legal issues.

Therefore, the Court finds good cause exists to amend and Defendant's Motion to Amend the Rule 16 Scheduling Order (Doc. # 163) will be granted.

**b. Law of the Case Doctrine Fails to Bar Defendant's Motion**

Plaintiff contends that the law of the case doctrine precludes the Court's consideration of Defendant's Summary Judgment Motion. Plaintiffs argument fails.

■ The law of the case doctrine requires a district court to follow the appellate court's decision on issues of law in all subsequent proceedings. *United States ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1186–87 (9th Cir.2001); *Winter*

v. *United States*, 190 F.Supp.2d 1187, 1191 (D.Ariz.2002). The doctrine applies to the appellate court's "explicit decisions as well as those issues decided by necessary implication." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir.1995) (quoting *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir.1989)). In other words, even when the appellate court fails to expressly address issues, if those matters were "fully briefed to the appellate court and ... necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir.2001) (citing *In re Felt*, 255 F.3d 220, 225 (5th Cir.2001)). "A significant corollary to the doctrine recognizes that dicta provides no preclusive effect." *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990).

Plaintiff argues that two statements in the Ninth Circuit's opinion preclude granting Defendant's Summary Judgment Motion under the law of the case doctrine. These two statements consist of the following:

> To the extent Greenawalt alleged he had an employment arrangement under which he could only be fired for cause, his right to job security vested with the promulgation of the District's Statement of Policy ("Policy"), which occurred within a year of his move from Rural Metro to the District in 1994.

And:

> Given the manner in which the Policy was created, the absence of all but one of these disclaimers (noted above) in the Policy creates an issue of fact as to the parties' relationship. Because such ambiguity is present, the nature of Greenawalt's employment should have gone to a jury.

Response Summary Judgment Motion at p. 2 (quoting *Greenawalt v. Sun City West Fire District*, 23 Fed.Appx. 650 (9th Cir. 2001)) (Doc. # 165).

▮ However, neither of these statements precludes the Court from considering Defendant's Motion because they cannot even remotely be interpreted as explicitly or implicitly deciding the issue of whether the District Board can bind successor boards. First, the use of the word "vested" simply indicates that if a jury determined Plaintiffs employment status contained job security protection, such rights became effective in 1994. It does not resolve the issue in the current Summary Judgment Motion, the duration of the "vested" rights. Next, the current Summary Judgment Motion does not seek a determination of the status of Plaintiffs employment. Instead, it is argued that even if the Plaintiffs employment status contains job security protections, the protections fail to bind successor District Boards.

Therefore, in its Opinion, the Ninth Circuit *only* explicitly addressed the at-will nature of Plaintiffs employment. Further, the parties' earlier briefs and arguments in both this Court and the Ninth Circuit *exclusively* framed the issue as the at-will nature of Plaintiffs employment, and this Court and the Ninth Circuit did not venture into the Arizona statutory law regarding binding successor boards. Accordingly, the law of the case doctrine is inapposite. *Lujan*, 243 F.3d at 1187 (holding that previous appellate court decision reversing dismissal for lack of jurisdiction based on a statute did not preclude the district court on remand from dismissing for lack of jurisdiction based on mother statute not previously considered by the court); *Milgard Tempering, Inc.*, 902 F.2d at 716 (holding that any general remarks made by appellate court about who was

the "prevailing party" constituted dicta which failed to trigger the law of case doctrine); *Alpha/Omega Ins., Serv., Inc.,* 272 F.3d at 280–81 (holding that previous appellate court decision reversing summary judgment based on one specific ground did not preclude the district court on remand from granting summary judgment on grounds not previously considered by the court); *see also Winter v. United States,* 190 F.Supp.2d 1187, 1190–91 (D.Ariz.2002) (finding the law of the case doctrine precluded district court from ruling on summary judgment motion because it *raised the identical argument* as another summary judgment motion previously appealed to the appellate court).

### c. Successor Board Doctrine Fails to Apply to Plaintiffs Contract

Defendant argues that Plaintiff cannot establish that a valid enforceable employment contract existed at the time of his termination because any employment contract made by a prior board fails to bind any successor board. (Doc. # 152). Plaintiff attacks this argument on two grounds: (1) that Arizona overruled the cases relied on by Defendant; and (2) that even if these cases remain good law, they fail to apply in this case. The Court finds for other reasons that the successor board doctrine fails to apply to his case.

### (1) Successor Board Exception

In *Town of Tempe v. Corbell,* 17 Ariz. 1, 147 P. 745 (1915), the Arizona Supreme Court created the successor board exception. The court upheld the right of a successor town counsel to invalidate a street sprinkling contract entered into by the previous town counsel. The court explained that while the "general rule" provides that a contract extending beyond the term of office of the members of a public board remains valid if entered into in good faith, a public policy

exception to the rule exists applicable to contracts in reference to matters which are *personal* to the board in their nature, and the contract limits the power of the succeeding members to exercise a discretion in the performance of a duty owing to the public.

*Id.* at 8, 147 P. at 748 (emphasis added). In dicta, the court quoted from another jurisdiction to explain the rationale for its ruling:

The rule established by the decision of the lower court is that public officers upon whom is devolved the duty of selecting persons to render daily routine services of a very common character about a public building have the power to enter into contracts with these persons, which, both as to terms of service and compensation, will bind the public, and will deprive their successors in office from making any changes, except for such causes as would relieve the master from the obligations of a contract entered into with a servant. No authority can be found which will sustain such a rule of law. Should this doctrine prevail, the committee in question could have contracted with plaintiff for his services as custodian for a period of three, four, or five years, ... and the compensation to be paid would, if the right be conceded at all, necessarily be within the somewhat unlimited discretion of the committee. Authorized to appoint a janitor, a custodian, and, in general language, such other employees as may be deemed necessary, the committee could, on any day during the year, enter into a time contract with any employe, from janitor down to scrubwoman, for no distinction can be made, based upon the kind of work performed by the employe. If a custodian can be permitted to bind the public with a contract, so can the most menial employe about the premises. Under this doctrine, places with

excessive salaries attached could be made for a host of political friends by the members of an outgoing committee, and their successors would be powerless—practically unable—to change the force, or to drop persons not needed, or to reduce their compensation. A rule of this kind in the public service would prove intolerable.

*Id.* at 10–11, 147 P. at 748–49 (quoting *Egan v. City of St. Paul,* 57 Minn. 1, 58 N.W. 267 (1894)). In dissent, Justice Ross argued that applying the successor board exception to a street sprinkler violated the rationale behind the public policy exception. He maintained that, because a street sprinkler fails to be someone "whose professional honesty, skill, and ability are to be delegated or confided important functions of the counsel," absent a showing of bad faith the contract should bind successor boards. *Id.* at 12–13, 147 P. at 749–50.

Since 1915, Arizona courts relied on the successor board exception in a handful of cases. *Pima County v. Grossetta,* 54 Ariz. 530, 97 P.2d 538 (1939); *Serna v. Pima County,* 185 Ariz. 380, 916 P.2d 1096 (Ct. App.1996); *City of Phoenix v. Long,* 158 Ariz. 59, 761 P.2d 133 (Ct.App.1988); *Copper Country Mobile Home Park v. City of Globe,* 131 Ariz. 329, 641 P.2d 243 (Ct.App. 1981); *Tryon v. Avra Valley Fire District,* 659 F.Supp. 283 (D.Ariz.1986).

Most significantly, in *Grossetta* the Arizona Supreme Court elaborated on the successor board exception:

Where the contract in question is a unitary one for the doing of a particular and specified act, but its performance may extend beyond the term of the officers making it, if it appears that the contract was made in good faith and in the public interest it is not void because it will not be completed during the term of those officers. If, on the other hand, the contract is for the performance of personal or professional services for the

employing officers, their successors must be allowed to choose for themselves *those persons on whose honesty, skill and ability they must rely.*

*Grossetta,* 54 Ariz. at 538, 97 P.2d at 541 (emphasis added). Applying this rule, the court found that a contract employing attorneys to "handle certain specific matters for a fixed compensation and not on a time basis" failed to fall under the successor board doctrine. *Id.*

In more recent cases, Arizona has applied the exception to allow successor boards to invalidate employment contracts for (1) country managers, *Serna,* 185 Ariz. 380, 916 P.2d 1096; and (2) fire chiefs, *Tryon,* 659 F.Supp. 283. In these decisions, the contracts were voided to "promote freedom of appointment of those officers on whom the success of a political policy will rest." *Serna,* 185 Ariz. at 381, 916 P.2d at 1097. Further, the opinions quote with approval from *Grossetta* regarding what appeared to be a narrowing of the successor board exception to giving boards the discretion to chose employees " 'on whose honesty, skill and ability they must rely.' " *Id.; Tryon,* 659 F.Supp. at 285.

Finally, the more recent Arizona opinions reject the argument that the successor board exception impedes a board from retaining qualified professionals. The court stated:

While that may be true, we have our doubts. The citizens of our state have lived with this rule for 80 years. We have not been perfectly governed but there is little to suggest that any failures result from the inability of public officers to negotiate "golden parachutes" to protect them against the political vicissitudes of life. If, however, evidence can be marshalled to demonstrate the political cost of the [successor board excep-

tion], the legislature would surely change it.

*Serna,* 185 Ariz. at 381, 916 P.2d at 1097. The Arizona legislature has yet to legislate such changes.

### (2) *Demasse* Fails to Overrule the Successor Board Exception

Plaintiff first attacks Defendant's *Summary* Judgment Motion by arguing that the Arizona Supreme Court overruled the successor board exception in *Demasse v. ITT Corp.,* 194 Ariz. 500, 984 P.2d 1138 (1999).

Plaintiff misreads *Demasse* by claiming that it holds that in *all* employment situations, once created, employment contractual rights vest, thereby invalidating any later attempt *to* unilaterally modify the terms. However, *Demasse* actually addressed a far narrower issue. *Demasse* involved a purely private employment contract, with no attention given to public employment contracts, and more to the point, the public policy concerns underlying the successor board exception. Therefore, *Corbell* and its progeny remain good law in Arizona.[2]

### (3) Successor Board Exception Does Not Apply to Plaintiff's Alleged Employment Contract

Lastly, Plaintiff argues that the successor board exception is inapplicable because it only applies to employment contracts involving personal services performed directly for the successor board. Here, Plaintiff contends that pursuant to District Board policies, he "answered to, and was fired by the Fire Chief, and not the Fire Board." (Response Summary Judgment Motion p. 4) (Doc. # 165). If the successor board exception applied to Plaintiff, "there could be wholesale loss of public employees otherwise protected by the merit system and all other due process rights." *Id.* at p. 5. While Plaintiff neglected to cite any authority to support this argument, the Court has found legal authorities that endorse limiting successor board exceptions to only key personnel.[3]

 Absent from Plaintiffs briefing of the issue was any citation to the controlling Ninth Circuit case law for deciding an issue of first impression of Arizona law. Because Arizona courts have not yet applied Arizona law to the circumstances of this case, the Court must "make a reasonable determination of the results the highest state court would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, n. 7 (9th Cir.2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft,* 989 F.2d 1105, 1108 (9th Cir. 1993)). The Court "must use [its] best judgment to predict how that [ Arizona Supreme] court would decide it." *Capital*

---

**2.** The Court notes that an argument can be made that *Demasse* reflects a trend in Arizona case law to narrow the scope of the successor board exception. However, the argument is mere conjecture because the *Demasse* decision does not even tacitly address the successor board exception or cite to *Corbell* and its progeny. What is more, *Demasse* was a split decision of the Arizona Supreme Court and only two of the justices remain on the bench—one who joined the majority and one who joined the dissent.

**3.** *See, e.g., Hazel Park v. Potter,* 169 Mich.App. 714, 426 N.W.2d 789, 792 (1988) (citing 56

*Am.* Jur.2d, Municipal Corporations, § 154 (1971), pp. 206–208) (explaining that " 'it has been ordinarily held that the [successor board exception] has no application to persons holding a mere employment, such as schoolteachers. In such cases, a contract may be made extending beyond the term of the members of the council who make it.' "); 10A McQuillin, Municipal Corporations, § 29.101 (3d ed.1990), p. 46 (advocating applying successor board exception only "where the nature of an office or employment is such that it requires a municipal board or officer to exercise supervisory control over the appointee or employee, together with the power of removal").

*Dev. Co. v. Port of Astoria,* 109 F.3d 516, 519 (9th Cir.1997)(quoting *Allen v. City of Los Angeles,* 92 F.3d 842, 847 (9th Cir. 1996)).

Here, if the Court solely relies on the Arizona Supreme Court decision creating the successor board exception, Defendant's motion should be granted. The 1915 opinion clearly rejected any limitation to which personnel the exception applied. *Corbell,* 17 Ariz. 1, 147 P. 745 (rejecting dissent argument to not apply exception to street sprinkler). However, the Court cannot ignore the well-reasoned decisions that followed it, as well as the recognition by those courts that the passage of time has brought many changes to the employment setting, including a significant expansion of government bureaucracy.

Notably, the only Arizona Supreme Court decision following *Corbell* that discussed the successor board exception was issued in 1939. In *Grossetta,* 54 Ariz. 530, 97 P.2d at 538, the court applied a limitation to the exception by excluding its application to unitary contracts. *Id.* at 538, 541, 97 P.2d 538. The court did not, however, reach the question of whether the exception applied to all non-unitary employment contracts. In mere dicta, the court mentioned that board successors must be allowed "to choose for themselves those persons on whose honesty, skill, and ability they must rely." *Id.*

▆ The more recent decisions of lower Arizona courts addressing the exception appear to cite this dicta with approval or, perhaps, only apply the exception to key personnel hired directly by boards to personally serve them. *Serna,* 185 Ariz. 380, 916 P.2d 1096;*Long,* 158 Ariz. 59, 761 P.2d 133; *Copper Country Mobile Home Park,* 131 Ariz. 329, 641 P.2d 243; *Tryon,* 659 F.Supp. 283. These courts recognize that the public policy reason behind the exception only applies to such individual personnel because boards must be free to hire and fire such persons to ensure the implementation of their directives and advancement of their political policies. All others, enjoying mere employment, fail to place in jeopardy the same public policy concerns.

Therefore, the successor board exception fails to prohibit the District Board from binding successor boards with respect to Plaintiffs employment contract. The District Fire Chief hired Plaintiff, and Plaintiff worked for this individual. Plaintiff never personally served the District Board. He fails to constitute the type of key personnel to which the successor board exception applies.

## C. Motion to Dismiss or Alternatively for Summary Judgment on Due Process Claims

Having determined Defendant's first motion fails, the Court now turns to Defendant's second motion. Here, the Court grants the Motion to Dismiss as to Count 1, but denies it as to Count 2.

### 1. Violation of Due Process Claim (Count 1)

Both parties agree that Plaintiffs violation of due process claim fails as a matter of law. *See* Motion at pp. 3–4 (Doc. # 145); Response at pp. 2–3 (Doc. # 160) (agreeing *claim fails as a matter of law,* but arguing for *sua sponte* dismissal because Defendant's motion fails procedurally).

▆ The Ninth Circuit unequivocally holds that a plaintiff complaining of a violation of a constitutional right by a state actor must utilize 42 U.S.C. § 1983 and may not pursue a claim directly under the Constitution. *Martinez v. City of Los Angeles,* 141 F.3d 1373, 1382 (9th Cir.1998) ("a plaintiff may not sue a state defendant directly under the Constitution where section 1983 provides a remedy, even if that remedy is not available to the plaintiff");

*Azul–Pacifico, Inc. v. City of Los Angeles,* 973 F.2d 704, 705 (9th Cir.1992) (finding that plaintiff had no cause of action directly under the Constitution and noting that "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983"); *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981). Therefore, Plaintiffs violation of due process claim (Count 1) should be dismissed.

### 2. Violation of 42 U.S.C. § 1983 Claim (Count 2)

Defendant argues that Plaintiff fails to adequately allege a claim of municipal liability under § 1983. (Motion pp. 4–7) (Doc. # 145). Plaintiff responds with four counter-arguments. Plaintiffs last argument persuades the Court to deny Defendant's Motion.

### a. Untimely Filing of Motion to Dismiss or Alternatively Summary Judgment

First, Plaintiff contends that because Defendant filed its Motion after the deadline for dispositive motions set by this Court four years ago in a Rule 16 Scheduling Order, the Court must not consider the Motion.

Defendant replies that pursuant to Local Rule 1.9(e)(2), it incorporates by reference its Motion to Amend Rule 16 Scheduling Order filed on September 6, 2002 (Doc. # 163). As explained above, the Court grants the Motion to Amend. Therefore, Plaintiff's first argument for denying Defendant's Motion fails.

### b. Improper Assertion of Summary Judgment Motion and Motion to Strike

Next, Plaintiff argues that Defendant improperly asserts a Summary Judgement Motion by failing to file a separate SOF, as required by Local Rule 1.10(1).

Defendant replied that its Motion only addresses the insufficiency of the allegations of the Complaint, not requiring consideration of materials outside the pleadings or even any issues of fact. Therefore, it does not require a separate SOF. Defendant explains its rationale in including the statement about alternatively seeking summary judgement as follows:

> [T]he Federal Rules of Civil Procedure do permit the Court to consider matters outside the pleadings and to treat the Fire District's Motion as a summary judgment motion. See Fed.R.Civ.P. 12(b) and (c). The Fire District expressly reserved this option by requesting summary judgment as an alternative form of relief.

(Reply p. 7) (Doc. # 169). Defendant then filed a separate SOF *after* Plaintiffs Response because "[a]lthough Greenawalt has chosen not to submit extraneous evidence in his Response, he has made numerous arguments which reference factual issues and has in effect requested the Court to look beyond the scope of the pleadings." *Id.*

Plaintiffs responded to this belated SOF by filing a Motion to Strike. (Doc. # 174). Plaintiff points out he suffers prejudice because "the rules do not ... allow a surrepy, and there is no procedure which would allow plaintiff any opportunity to respond or to provide additional facts." *Id.* at p. 4.

Responding to the Motion to Strike, Defendant argues that it only filed the SOF because Plaintiffs Response contained "no less than six factual issues ... outside the scope of the pleadings and for which he provided no separate statement of facts." (Response Motion to Strike p. 2) (Doc. # 175). Therefore, Defendant contends, *Plaintiff himself* converted Defendant's initial Motion to Dismiss into a Summary Judgment Motion, entitling Defendant to

the opportunity to submit relevant material to refute Plaintiffs factual assertions pursuant to Fed.R.Civ.P. 12(c).[4]

In his Response, Plaintiff writes that "it is not our intent to convert Defendant's motion to a motion for summary judgment . . . ." (Response p. 7) (Doc. # 160). Considering the confusion surrounding Defendant's intentions, and Plaintiffs failure to file any response to Defendant's belated SOF or his own SOF, the Court construes Defendant's Motion as solely a Motion to Dismiss based on the parties pleadings. Therefore, the Court grants Plaintiffs Motion to Strike (Doc. # 174). Having done so, the Court will not rely on the six factual allegations raised by Plaintiff in his Response to the original Motion when makings its ruling. (Response pp. 9–10) (Doc. # 160).

### c. Law of Case Doctrine

 As a third argument against granting Defendant's Motion, Plaintiff contends that the law of the case doctrine precludes the Court's consideration of Defendant's Motion. Plaintiff argues that the Ninth Circuit's statement that "the nature of Greenawalt's employment should have gone to a *jury,*" precludes granting Defendant's Motion under the law of the case doctrine. *See* Response at p. 7 (quoting *Greenawalt v. Sun City West Fire District,* 23 Fed.Appx. 650 (9th Cir.2001)). (Doc. # 160).

However, proper application of the law of the case doctrine indicates that neither this statement, nor any other statement in the Ninth Circuit's Opinion precludes the Court from considering Defendant's Motion. The Ninth Circuit's Opinion, other than ruling on the inadmissibility of Plain-

tiffs proffered expert testimony, addresses *only* the at-will nature of Plaintiffs employment. Furthermore, the parties' earlier briefs and arguments in both this Court and the Ninth Circuit *exclusively* framed the issue to be decided as the at-will nature of Plaintiffs employment. At no time did the parties, the Court, or the Ninth Circuit consider, either explicitly or implicitly, whether, even if the Plaintiffs employment status contains job security protections, he nonetheless cannot prevail on his due process claims for other legal reasons.

Accordingly, the law of the case doctrine fails to apply. *Lujan,* 243 F.3d at 1187 (holding that previous appellate court decision reversing dismissal for lack of jurisdiction based on a statute did not preclude the district court on remand from dismissing for lack of jurisdiction based on another statute not previously considered by the court); *Milgard Tempering, Inc.,* 902 F.2d at 716 (holding that any general remarks made by appellate court about who was the "prevailing party" constituted dicta which failed to trigger the law of case doctrine); *Alpha/Omega Ins. Serv., Inc.,* 272 F.3d at 280–81 (holding that previous appellate court decision reversing summary judgment based on one specific ground did not preclude the district court on remand from granting summary judgment on grounds not previously considered by the court); *see also Winter v. United States,* 190 F.Supp.2d 1187, 1190–91 (D.Ariz.2002) (finding the law of the case doctrine precluded district court from ruling on summary judgment motion making the exact same argument as another summary judgment motion previously appealed to the appellate court).

---

4. Fed.R.Civ.P. 12(c) provides:
 If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

#### d. Municipal Liability Under § 1983

Lastly, Plaintiff argues that he properly pled, under Fed.R.Civ.P. 8's notice pleading standard, a § 1983 municipal liability claim. Section 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution. It fails to create any substantive rights; instead, it constitutes a vehicle whereby plaintiffs can challenge actions by governmental officials. "To prove a case under § 1983, the plaintiff must demonstrate that (1) the action occurred 'under the color of law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002).

Plaintiff alleges a municipal liability § 1983 action against Defendant. Neither side contests that Defendant acted under color of state law. Instead, the dispute centers on whether the Defendant violated Plaintiffs Constitutional procedural due process rights and property rights.

#### (1) Legal Standard

Like other § 1983 defendants, municipalities may not be held liable under § 1983 on the basis of respondeat superior. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding no respondeat superior liability for municipalities under § 1983); *see also Hansen v. Black,* 885 F.2d 642, 645–46 (9th Cir.1989) (holding no respondeat superior liability for supervisors under § 1983). Rejection of respondeat superior liability means that "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell,* 436 U.S. at 692, 98 S.Ct. 2018.

Municipal liability depends upon its own wrongdoing. The Supreme Court defines municipal wrongs as (1) the enforcement of a municipal policy, practice, custom, or decision of a policymaker that (2) causes the violation of the Plaintiff's federally protected rights. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. A single act by a municipal employee satisfying these two requisites provides a sufficient basis for imposing liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478 n. 6, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Oklahoma City v. Tuttle,* 471 U.S. 808, 822, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

While Plaintiff must establish the existence of a municipal policy, he need not prove the policy facially unconstitutional. *City of Canton v. Harris,* 489 U.S. 378, 386–87, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A facially constitutional municipal policy may be applied in an unconstitutional manner. *Jackson v. Gates,* 975 F.2d 648 (9th Cir.1992). However, the Plaintiff must still establish that the enforcement of the policy caused a deprivation of a federal right. *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Moreover, Plaintiff must demonstrate that the municipality committed "deliberate action" that constitutes a "'moving force' behind the plaintiff's deprivation of federal rights." *Board of County Comm'rs v. Brown,* 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

A policy "generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City,* 471 U.S. at 823, 105 S.Ct. 2427. The Supreme Court defines three different ways in which municipalities create policy.

#### (a) Embodied in an Official Policy Document

First, the clearest type of policy exists formally embodied in a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the municipality's lawmaking body. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. These municipal

rules are typically intended to "establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur,* 475 U.S. at 480–81, 106 S.Ct. 1292. However, this may not always be the case:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision *to* adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" .... More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

*Id.* at 481, 106 S.Ct. 1292.

### (b) Action of Official Policy Maker

The second way municipality policy may be created consists of a single edict or act by a municipal officer with final policy making authority. *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur,* 475 U.S. 469, 106 S.Ct. 1292. Whether an official possess such authority depends upon state law. *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292. States grant authority to officials to make municipal policy either (1) directly by legislative enactment or (2) by delegating by me official with policymaking authority to another official. *Id.*

A critical distinction exists between whether the official's actions establish a policy or simply constitute the exercise of discretion in enforcing existing policy. *Praprotnik,* 485 U.S. at 126, 108 S.Ct. 915; *Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. 1292. An official's exercise of discretion within the bounds of a policy established by another official fails to constitute he formulation of policy, but rather simply reflects the implementation of previously established policy. However, applying this distinction to the facts often proves difficult. For example, when an official exercises discretion that departs from the established policy, does this constitute an improper exercise of discretion, or an act establishing new policy?

The plurality's emphasis in *Praprotnik* upon final policy making authority means that if superior policy makers review a subordinate's decision, the subordinate's determination does not create a policy. *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915. "However, [i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* But, the Supreme Court then goes on to note that "simply going along with the discretionary decisions made by one's subordinates ... is not delegation to them of the authority to make policy." *Id.* at 130, 108 S.Ct. 915. Ratification requires something more. *See, e.g., Gillette v. Delmore,* 979 F.2d 1342, 1347–50 (9th Cir.1992) (holding that municipal liability only attached after a showing that the final policy maker ratified subordinate's decision by affirmative or deliberate conduct).

### (c) custom

Finally, a widespread custom or practice creates a de facto municipal policy. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018 (stating that municipal liability may be based on "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels"). A persistent custom may constitute municipal policy even though it contradicts a charter, ordinance, regulation, *or* other provision. *Praprotnik,* 485 U.S. at 130–31, 108 S.Ct. 915.

### (2) Pleading Requirements

In *Leatherman v. Tarrant County*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court unanimously rejected a heightened pleading requirement for federal court § 1983 municipal liability claims. The decision protects plaintiff from being obligated to plead specific evidentiary facts that he might not be able to obtain prior to discovery due to exclusive municipality control. However, even after *Leatherman*, an important question remains open: what is required to satisfy Fed.R.Civ.P. 8's notice pleading policy?

The Court finds that it must apply pleading standards in a realistic, common-sense fashion that recognizes that at the pleading stage (i.e. prior to discovery occurring) a plaintiff frequently lacks the actual details concerning a contested policy or custom.

### (3) Analysis

In his Complaint, Plaintiff alleges that Defendant adopted a policy granting him job security protections. (Complaint ¶¶ 12–15) (Doc. # 1). Then, he alleges that Defendant, through its subordinate Fire Chief, terminated him in violation of this policy. *Id.* at ¶ 16. Finally, Plaintiff alleges that this termination, made under color of state law, violated his federal rights. *Id.* at ¶¶ 33–36.

Defendant argues that these allegations fail to establish a municipal liability claim under § 1983 because Plaintiff never explicitly alleges that Defendant adopted a policy which caused a violation of Plaintiffs federal rights. At most, Defendant contends, Plaintiff alleges that the Fire Chief failed to follow an established policy when terminating Plaintiff—exactly the type of respondeat superior claim barred by § 1983.

■ Defendant's argument fails. In the Ninth Circuit, plaintiffs need not spe-

cifically allege a policy, it is enough if the policy may be inferred from the allegations of the complaint. *Shaw v. State of California*, 788 F.2d 600, 610 (9th Cir.1986); *Diem v. City and County of San Francisco*, 686 F.Supp. 806, 808 (N.D.Cal.1988); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 682–83 (9th Cir.2001) ("a claim of municipal liability ... is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice'") (quoting *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988)).

■ Here, Plaintiff pleads enough to infer the existence of a municipal policy. First, contrary to Defendant's contention that Plaintiff "simply states in his Complaint that [the Fire Chief] terminated him," Reply at p. 6 (Doc. # 169), Plaintiff actually specifically alleges that the *Defendant* terminated him, "through the Fire Chief." (Complaint 116) (Doc. # 1). The Court construes this allegation as indicating that the Fire Chief simply conveyed the message of termination to Plaintiff. Second, the Complaint states that Defendant adopted hiring policies. *Id.* at ¶ 15. Therefore, it can be inferred that Defendant constitutes a final policy maker.

Also, as explained above, a single act by a municipal officer with final policy making authority suffices to bring a municipal liability claim under § 1983. Thus, a liberal reading of Plaintiffs Complaint shows an inference that Defendant, the final policy maker on hiring, acted under color of law to terminate Plaintiff in violation of his Federal rights.

Of course, Plaintiff still faces the burden of proof at trial. However, his claim suffices to withstand a motion for judgment on the pleadings. Therefore, Defendant's

Motion as to the § 1983 claim (Count 2) is denied.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Amend (Doc. # 163) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Summary Judgment Motion for all Remaining Claims (Doc. # 152) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Strike Statement of Facts (Doc. # 174) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. # 145-1)is partially granted as to Count 1 and partially denied as to Count 2.

**IT IS FURTHER ORDERED** that Defendant's Alternative Summary Judgment Motion (Doc. # 145-2) is **DENIED.**

**IT IS FURTHER ORDERED** that a Final Pretrial Conference will be held on January 17,2003 at 1:30 p.m., with trial scheduled to begin on March 18,2003 at 8:30 a.m.